JUSTICE BOATRIGHT
delivered the Opinion of the Court.
¶1 This case concerns the third step of the analysis laid out in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which requires trial courts to determine whether a party raising a Batson objection proved by a preponderance of the evidence that opposing counsel exercised a peremptory challenge to excuse a potential juror on the basis of race or gender. Specifically, we consider whether the court of appeals erred in its review of the trial court’s Batson ruling by: (1) remanding for specific credibility findings of the prosecution’s non-demeanor-based reasons for its peremptory challenges, (2) refusing to credit the prosecution’s demean- or-based reasons because the trial court did not expressly find them to be credible, and (3) conducting flawed comparative juror anal-yses.[1]
¶2 First, we hold that an appellate court conducting a clear error review should defer to a trial court’s ultimate Batson ruling so long as the record reflects that the trial court weighed all of the pertinent circumstances and it supports the court’s conclusion as to whether the objecting party proved purposeful discrimination by a preponderance of the evidence. Second, we hold that a trial court’s failure to make specific credibility findings about demeanor-based reasons does not—on its own—prevent a reviewing court from concluding that the trial court credited those reasons. Third, we hold that appellate courts may conduct comparative juror analyses despite an objecting party’s failure to argue a comparison to the trial court, but only where the record facilitates a comparison of whether the jurors are similarly situated. An empaneled juror is similarly situated to a dismissed potential juror for the purposes of an appellate court’s comparative juror analysis if the empaneled juror shares the same characteristics for which the striking party dismissed the potential juror.
¶3 We conclude that the trial court here did not commit clear error in step three of its Batson analysis and that remand is unneces *513 sary. We therefore reverse the judgment of the court of appeals.
I. Pacts and Procedural History
¶4 The People charged Heather Beauvais with extortion and three counts of stalking in connection with her repeated attempts to contact a man whom she met on the internet. The matter proceeded to a jury trial. To begin jury selection, the court seated twenty-five potential jurors in the jury box and placed the remainder of the venire in the back of the courtroom in the order that they would be called to replace jurors who were later excused. During jury selection, potential jurors provided some basic information about their families, occupations, prior jury service, and connections to people working in law enforcement. The court informed the ve-nire of applicable legal concepts, inquired about any hardships the jurors might suffer if selected to serve, and asked the jurors about their willingness to take an oath to follow the law. The parties then conducted voir dire of the twenty-five jurors in the jury box. The parties agreed to excuse six potential jurors—three women and three men—for cause or hardship. As the court excused each person, the potential juror from the back of the courtroom who was next in order entered the jury box and assumed the excused juror’s seat. The trial court asked each of these replacements to answer the initial background questions and then allowed the parties to question them.
¶5 After both sides passed the jurors for cause, the trial court gave each side the opportunity to exercise its peremptory challenges. Each party had six available peremptory challenges and, beginning with the prosecution, alternated as they excused jurors one by one.[2] The parties could only use a peremptory challenge on the first thirteen jurors seated in the box. When a party excused a potential juror using a peremptory challenge from the first thirteen positions, the next potential juror in line from the remaining jurors would assume that juror’s number and seat. As a result, the parties knew who the replacement juror would be when they exercised a peremptory challenge. As the parties exercised each peremptory challenge, the court released the excused potential jurors from jury duty and allowed them to leave the courtroom.
¶6 The prosecution excused a total of five jurors, all of whom were women, while Beau-vais excused six jurors, all of whom were men. The final jury consisted of nine male and three female jurors, with a female alternate juror. The record indicates that the last potential juror in the jury box, who was not empaneled because the prosecution did not exercise its final peremptory challenge, was also female.
¶7 Beauvais objected under Batson after the prosecution’s third, fourth, and fifth uses of its peremptory challenges, arguing that the prosecution’s decision to excuse only women established a prima facie case of discrimination. The trial court deferred ruling on the objections until both sides finished using their peremptory challenges. At that point, Beauvais highlighted that, although thirteen of the thirty-one potential jurors in the initial venire were women, only four would serve on the jury because the court had excused three for cause or hardship, the prosecution had peremptorily excused five, and one was never empaneled because the prosecution had waived its final challenge. Finally, Beauvais also argued that none of the excused women had given responses that would indicate a pro-defendant bias, while some had even given responses traditionally considered favorable to the prosecution.
¶8 The prosecutor began his response by admitting that it had been some time since he had encountered Batson and that he had “never heard it [argued] in terms of gender.” He contended that, in any event, Beauvais had failed to make a prima facie showing of discrimination that would warrant a full Bat-son analysis because four women (including the alternate) remained on the jury.
¶9 The trial court disagreed. Recognizing that the prosecution had exercised all of its *514 peremptory challenges to excuse women, the court found that Beauvais had established a prima facie case of discrimination and, proceeding to step two of Batson, required the prosecution to provide gender-neutral reasons for its challenges. In response, the prosecutor offered several reasons for each peremptory challenge:
Juror [S.B.], looked disinterested[3] during the questioning. She offered no—she never raised her hand for any issue. Never nodded when another juror spoke and oftentimes was looking away from me during my questioning looking at her watch. She appeared to me to be young and had no kids.
Juror [L.G.], during the period when we were waiting for the remainder of the jurors to come back[,] she was in the back of the courtroom and she was coughing heavily. I don’t know if she was sick. She never indicated on the record that she was sick. But that was the impression I got.
Her husband is in the legal field. She has two daughters. One of which she said was stalked. I think it is inappropriate to have someone whose family member so closely alleged to have been a victim of the same crime that we’re charging here.
Juror [K.G.], is in college.... Has no kids. Appeared to be young. And it sounds as though she had a relationship with a large amount of law enforcement officers from the community from which she came to Denver.
Juror [A.B.], is also in college. Appeared to me to be young. Does not have any kids and did not expand on any of her comments when asked specifically about what we had spoken with [sic] prior to her getting on the panel. She seemed dead pan to me and gave no detailed explanations of why she was saying yes or no.
Juror [J.T.], also currently in college.... She also appeared young. Appeared disinterested. Did not volunteer any answers to my questions, although I tried to make eye contact with her to engage her in conversation. She never raised her hand or volunteered any information.
¶10 The trial court then gave Beauvais an opportunity to respond to the prosecution’s reasons. Beauvais argued that many of the prosecution’s reasons were pretextual. As relevant here, Beauvais first asserted that four men on the jury did not have children, even though the prosecution partially based its challenges to three female potential jurors on this same trait. Second, as to the prosecution’s reason that four female jurors appeared young or were attending college, Be-auvais argued that three male jurors who were slated to serve on the jury also appeared young and “college age.” Third, Beau-vais stated that the prosecution “did not inquire as to [L.G.’s] health” and thus could not rely upon that reason for excusing her. Finally, Beauvais asserted that the prosecution’s decision to waive its last peremptory challenge showed purposeful discrimination because exercising that challenge would have replaced a male juror with a female one. Beauvais did not comment on the demeanor of any of the jurors or in any way build a record as to juror demeanor.
¶11 The trial court asked if the prosecution wished to respond to Beauvais’s arguments comparing certain male jurors to the dismissed female jurors. The prosecution noted that each of its peremptory challenges stemmed from the combination of several reasons, not just each reason individually: “When you look at each individual juror and the collection of reasons that each was stricken[,] that puts them in a different situation than any other particular juror on the panel.” The trial court indicated that it would begin the orientation process for the jury and then take a recess to consider Beauvais’s Batson challenge before making its step-three ruling. Beauvais did not address the combination-of-factors argument the prosecution advanced, nor did she take a final opportunity to make a record about the excused jurors’ demeanor.
*515 ¶12 After the orientation and a recess, the trial court called the parties back into the courtroom and, outside the presence of the jury, issued its Batson ruling. “Ultimately,” it stated, “if either side were systematically or intentionally or purposefully attempting to discriminate against jurors because of race or religion or gender[,] that would be unacceptable in this courtroom and I would take that very seriously.” Addressing the prosecution’s peremptory challenges specifically, the trial court noted that it seemed that all of the potential jurors could be impartial and that the prosecution’s reasons for exercising its challenges were “not strong.” However, the court emphasized that the factors for exercising peremptory challenges are “subtle,” making it difficult to rule on a Batson challenge and find purposeful discrimination. With these observations in mind, the trial court overruled Beauvais’s Batson objection, stating that while it had “concerns given the nature and the outcome and the circumstances,” Beauvais “h[ad] not established there was purposeful discrimination.”
¶13 The jury ultimately found Beauvais guilty of one count of felony stalking under section 18-3-602(l)(c), C.R.S. (2016), and not guilty of the other charges. Beauvais appealed, arguing that the trial court had erred in overruling her Batson objections.
¶14 The majority of a division of the court of appeals concluded that the record was insufficient to facilitate review and thus remanded the ease to the trial court to make additional findings under step three of Bat-son. People v. Beauvais, 2014 COA 143, ¶¶ 3-9, — P.3d -. Specifically, the majority stated that it could not determine whether it was clear error for the trial court to rely on the female potential jurors’ age, college attendance, or apparent sickness because, while these characteristics were “objectively verifiable and could potentially form the basis of a legitimate peremptory challenge,” the trial court had “made no findings regarding the potential jurors’ ages or health, and there is nothing in the record to show whether the trial court believed that the prosecutor sought to excuse any of them because they were college students.” Id. at ¶ 19. Therefore, the court of appeals directed the trial court on remand to make specific credibility findings about these three justifications. ■ Id. at ¶ 20.
¶15 The majority also concluded that the prosecution’s other gender-neutral reasons were incredible and raised an inference of purposeful discrimination. Id. at ¶¶ 11-20. In doing so, the majority explained that under Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), it could not “presume the trial court found [the prosecution’s demeanor-based reasons] to be credible”—and therefore could not credit them on appeal—because the trial court had not made express credibility findings for each of those reasons. Id. at ¶ 18 (citing Snyder, 562 U.S. at 485, 128 S.Ct. 1203). Additionally, the majority stated that “[s]ome of the reasons the prosecutor offered for excusing female potential jurors ,.. applied equally to many male potential jurors in the venire,” which suggested that the prosecutor’s reasons were pretextual. Id. at ¶ 12 (discussing male jurors who had prior experiences with stalking, who were childless, or who had friends in law enforcement).
¶16 In sum, the majority held that: (1) remand was necessary for the trial court to explicitly find whether the gender-neutral reasons of youth, college attendance, and apparent sickness were credible; (2) it could not infer that the trial court found the demeanor-based reasons credible given the lack of specific findings; and (3) the non-demeanor-based reasons that applied equally to male jurors were incredible and raised an inference of purposeful discrimination.
¶17 The dissent disputed the majority’s conclusions regarding the necessity of remand and the inference of purposeful discrimination. Id. at ¶ 26 (Bernard, J., concurring in part, specially concurring in part, and dissenting in part). In the dissent’s view, the majority failed to accord the trial court proper deference when the majority first rejected many of the prosecution’s reasons for excusing the female potential jurors and then concluded the record was insufficient for lack of express credibility findings. M. at ¶¶ 26, 34-35. The dissent acknowledged that the trial court could have made more specific findings to explain why it had found the prosecutor’s *516 gender-neutral explanations credible. Id. at ¶ 40. However, the dissent reasoned that the trial court’s step-three analysis was sufficient because its “unambiguous finding means only one thing ... in the context of this case: The trial court implicitly chose to believe the prosecutor, which was a choice that was ‘peculiarly within [its] province.’ ” Id. at ¶¶ 40-44 (alteration in original) (quoting Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)). For the dissent, it was “obvious that the trial court took this issue seriously,” id. at ¶ 37, and that the trial court drew upon its personal observations of the process in making “the call that it thought was right,” id. at ¶ 48. The dissent concluded that the majority, and other appellate courts, “should not second-guess that call because we have not seen what the trial court saw, or heard what the trial court heard.” Id. at ¶¶ 46-48.
¶18 We granted certiorari and now reverse the court of appeals.
II. Law
¶19 We begin our analysis by outlining Batson’s three-step analysis for determining whether a party’s use of peremptory challenges was motivated by purposeful discrimination. We then discuss a trial court’s role in ruling on a Batson objection and the deference that a reviewing corad: owes to that ruling. Next, we address this trial court’s failure to make express credibility findings as to the prosecution’s non-demeanor-based reasons, the same failure as to the prosecution’s demeanor-based reasons, and the adequacy of the court of appeals’ comparative juror analysis. Ultimately, we conclude that the trial court here did not err in overruling Beauvais’s Batson objection and that remand is therefore unnecessary.
A. The Three-Step Batson Framework
¶20 The Equal Protection Clause of the Fourteenth Amendment “forbids striking even a single prospective juror for a discriminatory purpose.” Foster v. Chatman, — U.S. -, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016) (quoting Snyder, 552 U.S. at 478, 128 S.Ct. 1203). Accordingly, Batson and its progeny forbid parties in civil and criminal cases from exercising peremptory challenges to excuse potential jurors on the basis of race or gender. Batson, 476 U.S. at 89, 106 S.Ct. 1712 (race); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (gender).
¶21 In Batson, the U.S. Supreme Court laid out a three-step analysis for trial courts to use in determining whether the striking party excused a potential juror on a discriminatory basis. Foster, 136 S.Ct. at 1747. First, the objecting party must make a prima facie showing that the striking party exercised a peremptory challenge on the basis of race or gender. Id. Second, if the objecting party makes out a prima facie case, then the striking party must offer a nondiscriminatory reason for striking each potential juror in question. Id Finally, “in light of the parties’ submissions, the trial court must determine whether the [objecting party] has shown purposeful discrimination” by a preponderance of the evidence. Id. (quoting Snyder, 552 U.S. at 476-77, 128 S.Ct. 1203); accord Madison v. Comm’r, Ala. Dep’t of Corr., 761 F.3d 1240, 1250 (11th Cir. 2014), cert. denied sub nom Madison v. Thomas, — U.S.-, 135 S.Ct. 1562, 191 L.Ed.2d 649 (2015) (specifying the preponderance of the evidence standard) (citing Johnson v. California, 545 U.S. 162, 170, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005)). The trial court’s finding at step three as to whether the objecting party has shown purposeful discrimination is a “determination[ ] of credibility and demean- or” that lies “peculiarly within a trial judge’s province.” Snyder, 552 U.S. at 477, 128 S.Ct. 1203 (quoting Hernandez, 500 U.S. at 365, 111 S.Ct. 1859). Only the third step of the analysis is at issue here.
B. Standard of Review
¶22 “[A] trial court’s step-three determination as to the existence of [purposeful] discrimination is an issue of fact to which an appellate court should defer....” People v. Rodriguez, 2015 CO 55, ¶ 13, 351 P.3d 423, 429. We set aside a trial court’s factual findings only when they are so clearly erroneous as to find no support in the record. Downey v. People, 25 P.3d 1200, 1206 (Colo. 2001). A clear error review of a Batson ruling must *517 examine all circumstances bearing upon whether intentional discrimination motivated the challenges. Foster, 136 S.Ct. at 1748. Given this deferential standard, reversal is only proper under “exceptional circumstances.” Snyder, 552 U.S. at 477, 128 S.Ct. 1203 (quoting Hernandez, 500 U.S. at 366, 111 S.Ct. 1859).
C. Step Three of Batson
¶23 The trial court’s task at step three of a Batson analysis is to determine whether the objecting party proved that the striking party exercised peremptory challenges with a discriminatory animus. Rodriguez, ¶ 12, 351 P.3d at 429. One important tool that courts use to make this determination is an assessment of the striking party’s credibility and the plausibility of its nondiscriminatory explanations. Id. This credibility evaluation is challenging because the exercise of peremptory challenges is often a matter of instinct, and even articulating the reason for a challenge can be difficult. Miller-El v. Dretke, 545 U.S. 231, 252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); see also J.E.B., 511 U.S. at 148, 114 S.Ct. 1419 (O’Connor, J., concurring) (“Indeed, often a reason for [striking a juror] cannot be stated, for a trial lawyer’s judgments about a juror’s sympathies are sometimes based on experienced hunches and educated guesses.... ”). Thus, a trial court must consider “all of the circumstances that bear upon the issue of’ purposeful discrimination. Snyder, 552 U.S. at 478, 128 S.Ct. 1203; accord People v. Cerrone, 854 P.2d 178, 191 (Colo. 1993). These circumstances include, among others, the striking party’s demeanor, the plausibility of the explanations, and “whether the proffered rationale has some basis in accepted trial strategy.” Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Indeed, “the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge.” Snyder, 552 U.S. at 477, 128 S.Ct. 1203 (alterations in original) (quoting Hernandez, 500 U.S. at 365, 111 S.Ct. 1859).
¶24 “Though the trial court must evaluate all relevant facts, ‘the ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the [objecting party].’” People v. Wilson, 2015 CO 54M, ¶ 14, 351 P.3d 1126, 1132 (quoting Purkett y. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam)). Hence, a trial court should sustain a Batson objection only if the objecting party proves by a preponderance of the evidence that the striking party’s non-discriminatory reasons are sufficiently incredible that the “‘discriminatory hypothesis’ better fits the evidence.” Id; accord Elem, 514 U.S. at 768, 115 S.Ct. 1769 (“[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.”).
¶25 As we explained above, this determination “lies peculiarly within a trial judge’s province.” Cockrell, 537 U.S. at 339, 123 S.Ct. 1029 (quoting Hernandez, 500 U.S. at 365, 111 S.Ct. 1859); accord Wilson, ¶¶ 13-14, 351 P.3d at 1131-32. The trial court is in the best position to evaluate the striking party’s demeanor and the credibility of its justifications because the “trial judge is the judicial officer who watches and listens as voir dire unfolds, and who can discern the presence or absence of discriminatory intent.” Wilson, ¶ 23, 351 P.3d at 1134 (quoting Valdez, 966 P.2d at 599 (Kourlis, J., dissenting)); accord Rodriguez, ¶ 18, 351 P.3d at 430-31. The trial judge is also in the best position to evaluate a potential juror’s demeanor—and that of the striking party—when parties predicate peremptory strikes on the potential juror’s demeanor. See Snyder, 552 U.S. at 479, 128 S.Ct. 1203. It is for these reasons that appellate courts afford trial courts great deference and will only reverse under “exceptional circumstances.” Id. at 477, 128 S.Ct. 1203 (quoting Hernandez, 500 U.S. at 366, 111 S.Ct. 1859).
III. Analysis and Application
¶26 The People contend that the court of appeals erred in three ways: (1) by remanding for specific credibility findings on some of the prosecution’s non-demeanor-based reasons for its peremptory challenges, (2) by refusing to credit the prosecution’s demean- or-based reasons because the trial court did not expressly find them credible, and (3) by conducting a flawed comparative juror analy *518 sis. We address each of these contentions in turn.
A. Express Credibility Findings on Non-Demeanor-Based Reasons
¶27 The People assert that the court of appeals erred when it remanded the case and ordered the trial court to make express credibility findings as to the prosecution’s claim that it excused several female potential jurors in part because they were young, childless, in college, or apparently sick. The People assert that express credibility findings as to each of the striking party’s non-demeanor reasons are not necessary to satisfy step three of Batson. Rather, according to the People, a trial court’s ultimate decision to overrule a Batson objection can, under certain circumstances, be taken as an implicit crediting of the prosecution’s reasons and thus survive clear error review. We agree.
¶28 In framing this issue, we emphasize that the purpose of the Batson analysis is to determine whether the party making the Batson objection has proven by a preponderance of the evidence that the striking party excused jurors with discriminatory intent. Assessing the striking party’s credibility is an important component of that determination, but it is not the ultimate inquiry. Rather, the trial court’s obligation at step three is to determine whether the objecting party met its burden of proof under Batson, and it is this determination that we review for clear error.
¶29 While express credibility findings significantly aid effective appellate review, the U.S. Supreme Court does not require them for a trial court’s step-three determination. See, e.g., Thaler v. Haynes, 559 U.S. 43, 48, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (per curiam) (reversing the Fifth Circuit Court of Appeals’ broad characterization of Snyder as creating an express credibility finding requirement); Cockrell, 537 U.S. at 347, 123 S.Ct. 1029 (“We adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it.”). Though the Cockrell and Snyder Courts ultimately held that the respective trial courts had clearly erred, they did so on narrow, fact-specific grounds. Cockrell, 537 U.S. at 347, 123 S.Ct. 1029 (holding that it was clear error to fail to consider or discuss grounds asserted in the objection); Snyder, 552 U.S. at 479-85, 128 S.Ct. 1203 (holding that there was clear error where the record plainly refuted one basis for the challenge and the other basis was not subject to an express credibility finding and not credible on review).
¶30 Lower courts have followed suit and declined to require express credibility findings. A majority of the federal courts of appeals have affirmed Batson rulings on appeal where the trial courts failed to make express credibility findings.[4] Our court of appeals has also repeatedly held that step-three rulings based on implicit credibility determinations can survive clear error review.[5]
*519 ¶31 The reasoning underlying these eases is largely driven by the highly deferential standard of review that appellate courts apply in evaluating step-three determinations. The Court has long recognized that trial courts are uniquely positioned to judge the credibility and demeanor of both the challenged jurors and the challenging attorneys when making a Batson ruling. Snyder, 552 U.S. at 477, 128 S.Ct. 1203 (quoting Hernandez, 500 U.S. at 365, 111 S.Ct. 1859). As with any other finding of fact, a highly deferential standard of review precludes an appellate court from substituting its reading of a cold record for the trial court’s in-the-moment and better-informed determination. Cf., e.g., Gebhardt v. Gebhardt, 198 Colo. 28, 595 P.2d 1048, 1050 (1979) (“It is axiomatic that an appellate court cannot substitute itself as a finder of fact.... ”).
¶32 In Batson step-three rulings, the determination that trial courts must make is whether the objecting party proved by a preponderance of the evidence that discriminatory animus drove the striking party’s use of peremptory challenges. Whether the challenging party has met its burden of proof is a finding of fact that must find support in the record to survive clear error review. Thus, while a trial court must consider all of the evidence bearing upon the plausibility of a non-discriminatory reason and the possibility of discriminatory animus, see Snyder, 552 U.S. at 478, 128 S.Ct. 1203, it need not make express findings about that evidence and how it contributes to the court’s ultimate ruling, see Wilson, ¶ 23, 351 P.3d at 1134 (“Having observed the prosecutor’s demeanor firsthand, the tidal court concluded that she stated ‘an appropriate basis’ for excusing [the potential juror]. The court' thus implicitly found that the prosecutor was credible and that her race-neutral explanation for excusing [the potential juror] was sincere.” (Emphasis added.)). Declining to credit any Bat-son ruling unsupported by express credibility findings would ignore the central inquiry under a clear error review: whether that ruling is without support in the record. Consequently, we hold that an appellate court conducting a clear error review should defer to a trial court’s ultimate Batson ruling so long as the record reflects that the trial court weighed all of the pertinent circumstances and supports the court’s conclusion as to whether the objecting party proved purposeful discrimination by a preponderance of the evidence.
¶33 Applying these principles, we conclude that the trial court’s step-three analysis here was adequate because the court properly conducted a Batson analysis and issued a Batson ruling that could be reviewed on the record.[6] Except for L.G.’s illness, the prosecution’s non-demeanor-based reasons—that the potential jurors appeared young, were in college, or had no children—find support in the voir dire record independently from the prosecution’s invocation of these reasons.[7] Notably, the trial court never found that the non-demeanor reasons were pretextual or that the prosecutor’s demeanor was less than credible. It did state that the prosecution’s reasons were “not strong” and that it was concerned about the “nature and the outcome of the circumstances,” but it expressly noted that the burden of proof was on Beauvais and that she had failed to meet it.
¶34 The attention that the trial court paid to conducting a' proper analysis before ulti *520 mately overruling Beauvais’s Batson objection indicates that it considered all of the relevant circumstances and concluded that Beauvais did not establish that the prosecution’s proffer of these gender-neutral reasons was purposefully discriminatory. Thus, the trial court’s failure to specifically discuss the credibility of each of the prosecution’s gender-neutral reasons individually does not render its ruling clearly erroneous or require remand for further findings.
¶35 Having determined that the trial court’s failure to make express findings as to the prosecution’s gender-neutral reasons of age, lack of children, college attendance, and apparent sickness does not render its ultimate step-three finding dearly erroneous, we now address the same question with regard to demeanor-based reasons.
B. Express Credibility Findings on Demeanor-Based Reasons
¶86 The People argue that the court of appeals erred in holding that, under Snyder, an appellate court cannot credit a demeanor-based reason where the trial court did not expressly find the reason to be credible. They assert that an appellate court can presume that the trial court credited the prosecutor’s demeanor-based reasons where the defendant did not dispute those reasons. We do not adopt the People’s reasoning, but we agree that the court of appeals erred in its application of Snyder because the trial court’s obligation at step three is the same regardless of whether the striking party offers non-demeanor or demeanor-based reasons. We therefore hold that a trial court’s failure to make specific credibility findings about demeanor-based reasons does not—on its own—prevent a reviewing court from concluding that the trial court credited those reasons.
¶37 Consistent with our holding that a step-three ruling can survive clear error review without express credibility findings, we conclude that the trial court’s proper application of the Batson analysis yielded a step-three ruling, supported by the record, that the defendant had not met her burden in proving that purposeful discrimination had motivated the prosecutor’s peremptory strikes here. We begin our analysis with an examination of Snyder.
¶38 In Snyder, the defense raised Batson objections to the prosecution’s peremptory challenges of two black potential jurors. Snyder, 552 U.S. at 477, 128 S.Ct. 1203. The prosecution gave two race-neutral reasons for striking one of the potential jurors: (1) that he “looked very nervous,” and (2) that he was a student teacher with teaching obligations that might ineentivize him to vote for a lesser verdict in order to avoid a lengthy penalty phase. Id. at 478,128 S.Ct. 1203. The trial court ruled in step three of its Batson analysis that it was “going [to] allow the [peremptory] challenge” without identifying whether it credited either or both of the prosecution’s step-two reasons. Id. at 479, 128 S.Ct. 1203.
¶39 The U.S. Supreme Court ultimately held that the trial court had committed clear error in its step-three ruling. Id. at 484-86, 128 S.Ct. 1203. The Court expressed concern that the challenge and ruling as to the demeanor-based reason occurred the day after the juror exhibited the alleged demeanor, and that the trial court never expressly found this demeanor-based reason to be credible. Id. at 479, 128 S.Ct. 1203. The Court also concluded that the non-demeanor reason was pretextual because the record plainly refuted it. Id. at 480-83, 485, 128 S.Ct. 1203. This posture presented the Court with the “exceptional circumstances” that merit reversal even under a deferential clear error review. See id. at 474, 477, 128 S.Ct. 1203. The tenuous credibility of the step-three ruling as to the demeanor-based reason, coupled with the possibility that the trial court might have based its ruling entirely on the pretextual non-demeanor-based reason, meant that the Court could not simply “presume that the trial judge credited the prosecutor’s assertion that [the juror] was nervous.” Id. at 485, 128 S.Ct. 1203. With no other basis in the record to which the Court could defer, it reversed the trial court. Id. at 485-86, 128 S.Ct. 1203.
¶40 The Court has since clarified that Snyder did not announce a broad rule requiring express credibility findings but was instead the result of “the particular circumstances of *521 [that] ease.” Haynes, 559 U.S. at 48-49, 130 S.Ct. 1171. The Haynes Court emphasized that the prosecution’s step-two reasons in Snyder were either pretextual or incredible for reasons unique to those facts. Id. Some courts have ignored this admonition and inferred a more sweeping rule that would preclude appellate , courts from crediting any Batson ruling predicated on demeanor-based reasons that were not also the subject of express credibility findings. See, e.g., United States v. McMath, 559 F.3d 657, 665-67 (7th Cir. 2009). But a majority of courts applying Snyder have adopted a more narrow reading of the ease in line with the Haynes Court’s clarification. See, e.g., United States v. Thompson, 735 F.3d 291, 300-01 (5th Cir. 2013); United States v. Moore, 651 F.3d 30, 42 (D.C. Cir. 2011), affd in part on other grounds sub nom. Smith v. United States, 568 U.S. 106, 133 S.Ct. 714, 184 L.Ed.2d 570 (2013); Smulls v. Roper, 535 F.3d 853, 860-61 (8th Cir. 2008) (en banc); see also People v. DeGreat, 2015 COA 101, ¶¶ 35-37, — P.3d -, cert. granted on other grounds, No. 15SC754, 2016 WL 4087310 (Colo. Aug. 1, 2016); People v. O’Shaughnessy, 275 P.3d 687, 691 (Colo. App. 2010).
¶41 We agree with the courts that confine Snyder to its facts. Snyder exemplifies a record on which the trial court’s Batson ruling was not plausible and constituted clear error. Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (discussing clear error). This narrow reading of Snyder reconciles its analysis and holding with the highly deferential clear error standard of review and avoids inconsistency between how our lower courts treat demeanor-based and non-demeanor-based reasons. It also recognizes the practical consideration that the trial court may not—and need not—have observed the complained-of demeanor. Haynes, 559 U.S. at 48, 130 S.Ct. 1171. We therefore hold that a trial court’s failure to make specific credibility findings about demeanor-based reasons does not—on its own—prevent a reviewing court from concluding that the trial court credited those reasons.
¶42 In so holding, we reject the People’s argument that Snyder requires trial courts to make express credibility findings as to demeanor-based challenges only where the objecting party specifically disputes the demeanor-based reason. As discussed above, the Snyder Court’s conclusion that it could not presume that the trial court credited the demeanor-based reason was based on several factors unrelated to whether the objecting party disputed that reason. We see no basis, in Snyder or otherwise, to adopt the People’s rule. The central inquiry in reviewing a Bat-son ruling remains whether that ruling is supported in the record. See, e.g., Snyder, 552 U.S. at 477, 128 S.Ct. 1203; Rodriguez, ¶ 13, 351 P.3d at 429. Thus, while an objecting party’s decision to dispute (or not dispute) a demeanor-based reason may factor into the clear error analysis, it is not, by itself, dispositive.
¶43 Here, the court of appeals majority analogized the proceedings below to those in Snyder, explaining that several of the prosecutor’s non-demeanor-based reasons were refuted by the record and had not been subject to credibility findings. Beauvais, ¶ 18. The majority concluded that it could not presume that the trial court credited either the demeanor-based reasons or the otherwise credible non-demeanor-based reasons given the lack of credibility findings. Id. Because the trial court was not required to make express credibility findings as to the demeanor-based reasons, we conclude that the trial court did not clearly err regardless of whether it credited the prosecution’s demeanor-based reasons.
¶44 As we explained above, the trial court’s careful Batson analysis indicates that it accounted for all of the prosecution’s step-two reasons in concluding that Beauvais had failed to prove by a preponderance of the evidence that these reasons were pretextual. It is true that the trial court did not expressly find the demeanor-based reasons to be credible. But neither did Beauvais rebut these reasons or otherwise build a record on juror demeanor.[8] Significantly, the trial court *522 did not indicate that it thought the prosecution was being disingenuous in offering these reasons, and there is nothing in the record to otherwise refute the prosecution’s assessment of the challenged jurors’ demeanor. Therefore, we conclude in this case that the trial court did not clearly err in rendering its Batson ruling without also making express credibility findings as to the demeanor-based reasons.
C. Comparative Juror Analysis
¶45 Finally, we examine whether the court of appeals erred in its comparative juror analysis by: (1) comparing potential jurors on a trait—unwillingness to participate or volunteer answers—that Beauvais did not argue to the trial court, and (2) comparing specific traits rather than considering all proffered reasons for striking each juror.[9] We conclude that the court of appeals erred.
¶46 Ultimately, the purpose of the Batson analysis is to detect whether a party has violated the Fourteenth Amendment’s guarantee of equal protection by excusing a juror on the basis of race or gender. To accomplish this task, a trial court must determine at step three whether the objecting party has established by a preponderance of the evidence that the striking party engaged in purposeful discrimination in exercising its peremptory challenges. A proper comparison of two jurors is one tool that can aid in that determination: If a striking party’s stated reasons for striking a female potential juror apply equally to an otherwise-similar male potential juror who ultimately serves on the jury, then “that is evidence tending to prove purposeful discrimination.” See Dretke, 545 U.S. at 241, 125 S.Ct. 2317.
¶47 Comparing jurors, however, must be done carefully. A retrospective comparison of jurors based on a cold appellate record is inherently limited and prone to error. See, e.g., Snyder, 552 U.S. at 483, 128 S.Ct. 1203; Davis v. Ayala, — U.S.-, 135 S.Ct. 2187, 2201, 192 L.Ed.2d 323 (2015).
¶48 We examine the court of appeals’ comparative juror analysis in this case to decide first whether a comparison not argued to the trial court may properly be the subject of a comparative juror analysis on review, and second, whether single-trait comparisons are adequate. We hold that appellate courts may conduct comparative juror analyses despite an objecting party’s failure to argue a comparison to the trial court, but only where the record facilitates a comparison of whether the jurors are similarly situated. An empaneled juror is similarly situated to a dismissed potential juror for the purposes of an appellate court’s comparative juror analysis if the empaneled juror shares the same characteristics for which the striking party dismissed the potential juror.
1. Unargued Juror Comparisons
¶49 At trial, the prosecution’s step-two reasons for striking several potential jurors (S.B., K.G., and J.T.) included the assertion that these specific jurors were not sufficiently engaged during voir dire, The defense did not challenge these grounds or conduct a comparative juror analysis. As a result, there is nothing in the record regarding those potential jurors’ level of engagement beyond the prosecution’s assertions. The court of appeals nevertheless conducted a comparative juror analysis on juror engagement, concluding that “several males on the panel” also did not show a willingness to participate in jury selection or volunteer answers and that this raised an inference of purposeful discrimination. See Beauvais, ¶¶ 12, 18. The People assei't that it is per se erroneous to conduct a comparative juror analysis with regard to traits compared for the first time on appeal.
*523 ¶50 We initially note that this question is not one of issue preservation; both the voir dire record and the Batson objection were properly before the courts below. See Dretke, 545 U.S. at 241 n.2, 125 S.Ct. 2317. But while Beauvais preserved her Batson objection, she failed to argue or make a record on juror engagement. Such a failure results in a record that is unlikely to support that argument on review. Consequently, an appellate court’s review of a cold record can be especially “misleading when alleged similarities were not raised at trial.” Snyder, 552 U.S. at 483, 128 S.Ct. 1203. Because appellate courts can only access information that the parties develop for the record, a comparison unargued is also one that goes untested and unsupported. See id. At the very least, an objecting party’s failure to raise an alleged similarity to the trial court suggests that it is not a useful comparison.
¶51 For these ’reasons, this court has previously declined to conduct a comparative juror analysis when the objecting party failed to argue the comparison to the trial court. Valdez, 966 P.2d at 594 (“It was incumbent on the defense counsel to raise this argument to the trial court. If it was not apparent to the defense counsel that Mr. D was similarly situated to Mr. P, it is unreasonable to expect that the trial court should have noted the comparison on its own.”). Today we clarify Valdez and address when juror comparisons can appropriately be considered for the first time on appeal.
¶52 Unargued juror comparisons can be appropriate tools for discovering discriminatory animus, but their use should be limited to instances in which the reviewing court can make an informed comparison. Appellate courts can only make an informed comparison—i.e., accurately and reliably compare jurors on unargued traits—where the record is otherwise developed as to the material circumstances bearing on whether they are similarly situated. Ensuring that a reviewable record exists will often require an objecting party’s deliberate effort, especially where the compared trait is subjective or demeanor based (rudeness, apathy, inattentiveness) rather than objectively verifiable (age, employment, marital status). We do not intend to overburden trial courts with a duty to build an exhaustive record during voir dire. But without a record that facilitates a complete and meaningful comparison, appellate courts have no basis to review and reverse Batson rulings based on unargued comparisons. Consequently, we hold that appellate courts may conduct comparative juror analy-ses despite an objecting party’s failure to argue a comparison to the trial court, but only where the record facilitates a comparison of whether the jurors are similarly situated.
¶53 Applying this rule here, we conclude that the court of appeals’ comparative juror analysis as to juror engagement during voir dire is improper on this underdeveloped record. As we concluded above, the trial court’s decision to overrule Beauvais’s Batson objections as to S.B., K.G., and J.T. implicitly credited the prosecution’s assertion that these jurors “looked disinterested,” “seemed deadpan,” or did not adequately answer questions or volunteer information during voir dire. To the extent that these venire members spoke, the voir dire transcript demonstrates that S.B., K.G., and J.T. spoke infrequently and concisely. Nothing in the record, however, describes the same jurors’ facial expressions, gestures, or body language. As a result, the record does not rebut the prosecution’s assertions that it dismissed these venire members in part for lack of engagement. Additionally, and in large part because Beauvais failed to raise these demeanor-based comparisons to the trial court, the record is silent as to any male juror who was similarly situated to S.B., K.G., or J.T. in lack of engagement and who, despite being indifferent to the proceedings, was nevertheless empaneled. Absent a developed record, we cannot compare the challenged jurors to empaneled jurors in this material respect and cannot therefore conclude that the trial court clearly erred.
2. Single-Trait Comparisons
¶54 The People also contend that the court of appeals erred in comparing jurors with regard to individual traits rather than comparing them in all material circumstances *524 that bear on whether two jurors are similarly-situated. We agree.
¶55 Beauvais argued at trial that seven unexcused male jurors were similarly situated to several female potential jurors—S.B., K.G., A.B., and J.T.—whom the prosecution did excuse because they were young, had no children, or both. The trial court made no express credibility findings in this regard, but its ultimate ruling against Beauvais rejected this argument. The court of appeals reversed, concluding that because the record reflected that each of the excused female potential jurors shared at least one of these characteristics with an unchallenged male potential juror, their dismissal could be the result of gender discrimination. Beauvais, ¶¶ 18-20.
¶56 This sort of comparison minimizes the deference due under a clear error review. Two potential jurors need not be identical in every respect for them to be similarly situated and for the comparison to give rise to an inference of pretext. See Dretke, 545 U.S. at 247 n.6, 125 S.Ct. 2317 (“A per se rule that a defendant cannot win a Batson claim unless there is an exactly identical white juror would leave Batson inoperable; potential jurors are not products of a set of cookie cutters.”). But the inverse is also true: Isolated similarities do not automatically render two jurors “similarly situated” for purposes of deciding a Batson challenge. Tidal courts, unrestrained by a deferential standard of review and informed by their firsthand observations of the venire and the parties, are positioned to credit or ignore individual reasons in conducting comparisons; appellate courts are not.
¶57 We therefore hold that an empaneled juror is similarly situated to a dismissed potential juror for the purposes of an appellate court’s comparative juror analysis if the empaneled juror shares the same characteristics for which the striking party dismissed the potential juror. For example, if an attorney strikes a female potential juror because she is unemployed and lacks a college degree, a male potential juror who is either unemployed or lacks a college degree would not be similarly situated and not suitable for comparison. Conversely, a male potential juror who is both unemployed and lacks a college degree would be similarly situated to the excused female potential juror, and if the striking party did not strike him as well, this would be “evidence tending to prove purposeful discrimination.” It is even more important to compare jurors with regard to all traits listed as reasons for striking the challenged juror where, as here, the striking party credits the combination of these traits as the reason for excusing that juror. A party exercising peremptory challenges is free to do so for any non-discriminatory reason or combination of non-discriminatory reasons that furthers its litigation strategy. Elem, 514 U.S. at 767-68, 115 S.Ct. 1769; Batson, 476 U.S. at 89, 106 S.Ct. 1712. A court cannot substitute its own litigation strategy for that of the striking party. To avoid doing so, courts should tailor comparative juror analyses to the striking party’s reasons for striking a challenged juror. Applying this standard to the present case reveals dispositive differences between the challenged female potential jurors and the male empaneled jurors.
¶58 First, in addition to being young and childless, female potential jurors K.G., A.B., and J.T. were all attending college at the time of voir dire. Current college attendance was another gender-neutral characteristic that the prosecution gave as a step-two reason for dismissing these potential jurors. None of the allegedly comparable male potential jurors was attending college at the time of voir dire.
¶59 Second, the prosecution excused female potential juror L.G. because she was “coughing heavily.” The record does not reflect that any other potential juror exhibited similar symptoms. Additionally, the prosecution challenged L.G. because her spouse was in the legal field and one of her children had been a victim of stalking, a combination of characteristics unique in the jury pool.
¶60 Finally, the prosecution excused S.B., A.B., and J.T. not only because they were young or lacked children, but also because *525 they were disengaged during voir dire.[10] As discussed above, Beauvais failed to argue or make a record on juror engagement at trial. Without a developed record, we cannot meaningfully compare S.B., A.B., and J.T. to the male jurors in this regard. Hence, we conclude that the court of appeals erred in doing so.
¶61 In sum, the record shows that the challenged female potential jurors exhibited unique combinations of traits that materially distinguished them from the empaneled male jurors. This supports the trial court’s rejection of these juror comparisons, a finding to which we owe deference. Thus, we conclude that the trial court did not clearly err when it implicitly rejected Beauvais’s comparisons in determining that Beauvais had not proved purposeful discrimination.
IV, Conclusion
¶62 We take a final opportunity to reiterate that a trial court’s obligation at step three of a Batson analysis is to make a determination as to whether the objecting party proved by a preponderance of the evidence that the striking party exercised a peremptory challenge on a discriminatory basis. It is this finding of fact that we are called to review here. The tools we discussed above—credibility determinations and comparative juror analyses—are simply that, tools. They are not the required end product of a step-three ruling, but rather two means to achieve that end. The trial court here made a difficult finding on a close record; had it found in Beauvais’s favor, we no doubt would have affirmed that decision as well. It did not.
¶63 First, we hold that an appellate court conducting a dear error review should defer to a trial court’s ultimate Batson ruling so long as the record reflects that the trial court weighed all of the pertinent circumstances and supports the court’s conclusion as to whether the objecting party proved purposeful discrimination by a preponderance of the evidence. Second, we hold that a trial court’s failure to make specific credibility findings about demeanor-based reasons does not—on its own—prevent a reviewing court from determining that the trial court credited those reasons. Finally, we hold that appellate courts may conduct comparative juror analy-ses despite an objecting party’s failure to argue a comparison to the trial court, but only where the record facilitates a comparison of whether the jurors are similarly situated. An empaneled juror is similarly situated to a dismissed potential juror for the purposes of an appellate court’s comparative juror analysis if the empaneled juror shares the same characteristics for which the striking party dismissed the potential juror.
¶64 Accordingly, we reverse the judgment of the court of appeals.
JUSTICE MÁRQUEZ dissents.

.We granted certiorari to review the following three issues:
1. Whether the court of appeals erred in applying Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by remanding for additional findings where the trial court did not make express rulings on the credibility of the prosecution's proffered gender-neutral explanations for its peremptory challenges,
2. Whether the court of appeals erred by holding that, under Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), a reviewing court cannot credit a demeanor-based explanation for a peremptory strike where the trial court did not expressly find the explanation to be credible.
3.Whether the court of appeals erred by applying comparative juror analysis to jurors dismissed by the defense before the prosecution accepted the panel, by comparing traits that defense counsel did not challenge, and by focusing on specific traits instead of consideration of all proffered reasons for striking each juror.

. Because the final jury was to consist of twelve jurors and a thirteenth alternate juror; each side was allowed the typical five peremptory challenges plus an extra, sixth challenge to achieve the desired number of jurors.

. We assume from the context of the transcript that the prosecution used the term "disinterested” to mean lacking attention or care for the proceedings, i.e., apathetic, rather than lacking a personal motive or stake in the proceedings, i.e., unbiased. See Disinterested, Webster's Third New International Dictionary (unabr. ed. 2002) (defining "disinterested” to include both of these meanings).

, See United States v. Thompson, 735 F.3d 291, 301 (5th Cir. 2013); United States v. Moore, 651 F.3d 30, 41-42 (D.C. Cir. 2011), aff'd in part on other grounds sub nom. Smith v. United States, 568 U.S. 106, 133 S.Ct. 714, 184 L.Ed.2d 570 (2013); Smulls v, Roper, 535 F.3d 853, 860-61 (8th Cir. 2008) (en banc); Messiah v. Duncan, 435 F.3d 186, 198 (2d Cir. 2006); Hightower v. Terry, 459 F.3d 1067, 1072 n.9 (11th Cir. 2006); United States v. Castorena-Jaime, 285 F.3d 916, 929 (10th Cir. 2002); Evans v. Smith, 220 F.3d 306, 314 (4th Cir. 2000); United States v. Perez, 35 F.3d 632, 636 (1st Cir. 1994). But see United States v. McAllister, 693 F.3d 572, 581 (6th Cir. 2012); Riley v. Taylor, 277 F.3d 261, 286-87 (3d Cir. 2001) (en banc).
The Seventh and Ninth Circuits arguably harbor internal splits on this issue. Compare Murray v, Schriro, 745 F.3d 984, 1007 (9th Cir. 2014), and United States v. Corley, 519 F.3d 716, 723 (7th Cir. 2008), with Green v. LaMarque, 532 F.3d 1028, 1031 (9th Cir. 2008), and United States v, Rutledge, 648 F.3d 555, 558-61 (7th Cir. 2011). But see Morgan v. City of Chicago, 822 F.3d 317, 330 (7th Cir. 2016) (explaining that the different results.in Corley and Rutledge stemmed from the fact that their analyses were "tailored to the record before [the court]”).

. See People v, DeGreat, 2015 COA 101, ¶¶ 36-37, — P.3d -, cert. granted on other grounds, No. 15SC754, 2016 WL 4087310 (Colo. Aug. 1, 2016); People v. Phillips, 2012 COA 176, ¶ 168, 315 P.3d 136, 171; People v. O'Shaughnessy, 275 P.3d 687, 691, 695 (Colo. App. 2010), aff'd, on other grounds sub nom. O'Shaughnessy v. People, 2012 CO 9, ¶ 1, 269 P.3d 1233, 1234; People v. Robinson, 187 P.3d 1166, 1174 (Colo. App. 2008).

. Though our holding today demonstrates that they are not strictly necessary, we strongly urge trial courts to make explicit factual findings as to the credibility of the striking party’s non-discrim-inatoiy reasons to aid appellate review. Cf., e.g., Castorena-Jaime, 285 F.3d at 929 (“Although we affirm the district court’s ruling, we encourage district courts to make explicit factual findings on the record when ruling on Batson challenges.’’); DeGreat, ¶ 37 ("Such findings improve the appellate record and permit more meaningful review.”); O'Shaughnessy, 275 P.3d at 695. Express findings that the striking party’s non-discriminatory reasons are (or are not) credible eliminate the need and temptation for appellate courts to embark on their own doomed efforts to make credibility determinations from a cold record. See Perez, 35 F.3d at 636.

. The trial court asked an initial battery of questions to elicit background information from each juror before allowing the parties to conduct voir dire. The court's questions asked jurors to provide their name; education; current occupation; marital status; place of birth; whether they had children; any connections with law enforcement; and whether they had previously served on a jury, and if so, for what sort of case. Beauvais also conceded that the challenged female potential jurors appeared to be young.

. To the limited extent that the complained-of demeanor—lack of engagement during voir dire—appears in the record, the evidence supports the prosecution's assertions that these po *522 tential jurors responded concisely to its questions and did not otherwise volunteer information.

. The People also petitioned this court to review the court of appeals’ decision to use in its comparative juror analysis certain male potential jurors whom the defense excused before the prosecutor accepted the panel. See Beauvais, ¶¶ 12, 14, 18 (discussing L.G. and two excused male potential jurors, all of whom had experiences with stalking in the past). Beauvais concedes that the court of appeals erred when it included the excused male potential jurors in its comparative juror analysis. Hence, in the absence of any controversy, we do not address this issue.

. The prosecution specifically alleged that: (1) S.B. "looked disinterested,” "never nodded,” and "oftentimes was looking away from me during my questioning [or] looking at her watch”; (2) A.B. "seemed deadpan"; and (3) J.T. "appeared disinterested” and did not volunteer information or answers despite the prosecution’s effort to "make eye contact with her.”