23CA1383 Peo v Manzanares 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1383
Pueblo County District Court No. 05CR928
Honorable Amiel Markenson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Duane Manzanares,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1     Defendant, Duane Manzanares, appeals the postconviction court's order denying his motion for relief under Crim. P. 35(c). We affirm.

## I.     Background

¶ 2     According to the evidence presented at trial, Manzanares took all of his possessions and moved out of the Pueblo home he shared with his wife, Erica Manzanares,[1] and her children. Several days later, at about 3:30 a.m., Manzanares and his brother-in-law, "Bam," broke through the home's front door. The two men then forced open the locked door to Erica's bedroom, where Erica and her male friend, David Bryant, were sleeping. Manzanares pulled out a gun, and Erica exclaimed something like "No, Duane, don't do it." Manzanares fired two gunshots, killing Erica and seriously injuring Bryant. Manzanares and Bam fled.

¶ 3     Manzanares was arrested seven weeks later in a Denver hotel. Police found a document describing the heat of passion defense among his possessions.

---

[1] Because Erica shares a last name with Manzanares, we refer to her as Erica to avoid confusion. We mean no disrespect in doing so.

¶ 4      The People charged Manzanares with one count of first degree murder – after deliberation and one count of first degree assault.  At trial, defense counsel Michael Emmons's opening statement focused on a general denial defense, alerting the jury to a lack of either physical evidence or credible testimony placing Manzanares at the house that night.  The prosecution's case included testimony from eyewitness Bam; three teenaged earwitnesses who were in the home and testified that they heard "No, Duane . . ."; and Manzanares's cellmate, to whom Manzanares confessed to the shootings.  In closing, Emmons attempted to poke holes in the prosecution's case and argued that Bam had been the gunman.

¶ 5      The jury was instructed on the lesser included offense of second degree murder in addition to the charged crimes, but it found Manzanares guilty as charged.  The trial court sentenced him to consecutive terms of life without the possibility of parole and thirty years in the custody of the Department of Corrections (DOC).  A division of this court affirmed the convictions on direct appeal.  *See People v. Manzanares*, slip op. at 5, (Colo. App. No. 08CA1427, May 19, 2011) (not published pursuant to C.A.R. 35(f) (concluding

that "there was overwhelming evidence of Manzanares's guilt"). The convictions became final in December 2011.

## II.     Postconviction Proceedings

¶ 6     In November 2019, Manzanares filed a pro se Crim. P. 35(c) motion. The district court appointed postconviction counsel, who filed a supplemental motion arguing that Emmons had provided ineffective assistance by (1) asserting a general denial/alternate suspect theory of defense instead of pursuing a heat of passion mitigator to the lesser included offense of second degree murder and (2) advising Manzanares to decline the prosecution's offer of a guilty plea in exchange for a twenty-year prison sentence. The court ruled that the motion was untimely as to Manzanares's first degree assault conviction, denied the claims set forth in the pro se motion, and ordered the prosecution to respond to the two ineffective assistance claims raised by postconviction counsel.

¶ 7     The district court held an evidentiary hearing on those two claims. It heard testimony from Emmons, Manzanares, three of Manzanares's current and prior relatives, and an expert in criminal defense. Among many other factual findings, the court found that

- Emmons testified credibly.

- Emmons spoke with Manzanares before trial about the heat of passion document Manzanares had when he was arrested.

- Emmons made a strategic decision not to pursue a heat of passion mitigation defense based on various weaknesses in the prosecution's evidence and to avoid conceding that Manzanares was in the bedroom when Erica was murdered.

- Before trial, the prosecution offered a plea deal in exchange for a sentence of between sixteen and forty-eight years in the DOC, but Manzanares did not accept it.

- Emmons did not remember a twenty-year plea offer, there was no physical evidence of such an offer, and the witnesses who testified that there had been a twenty-year offer were not credible.

¶ 8 The district court ultimately found that Manzanares had failed to establish a right to postconviction relief and denied his Crim. P. 35(c) motion. On appeal, Manzanares generally challenges the court's denial of his ineffective assistance claims. We perceive no error.

III.   Standard of Review and Applicable Law

¶ 9   In a Crim. P. 35(c) proceeding, we presume the validity of a conviction, and the defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to postconviction relief.  *Dunlap v. People*, 173 P.3d 1054, 1061 (Colo. 2007).  When a district court's ruling follows an evidentiary hearing, we review the denial of a Crim. P. 35(c) motion as a mixed question of fact and law.  *People v. Corson*, 2016 CO 33, ¶ 25.

¶ 10   We defer to the court's assessment of the weight and credibility of witness testimony.  *Dunlap*, 173 P.3d at 1061-62; *see also Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563, 567 (Colo. 1991) ("It is . . . the province of the court, as the trier of fact, to determine the credibility of the witnesses and the weight to be given their testimony.").  And we defer to the court's factual findings unless "they are so clearly erroneous as to find no support in the record."  *People v. Beauvais*, 2017 CO 34, ¶ 22.  But we review de novo the court's ultimate legal conclusions.  *Dunlap*, 173 P.3d at 1063.

¶ 11   To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984).  First, the defendant must show that counsel's acts or omissions fell outside the wide range of professionally competent assistance.  *Id.* at 687-89.  Judicial scrutiny is highly deferential on this prong — we must "evaluate particular acts and omissions from counsel's perspective at the time." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).  Second, a defendant must show that they suffered prejudice from counsel's deficient performance, such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.

## IV.  Discussion

### A.  Assault Conviction

¶ 12    First, we agree with the district court that Manzanares's motion is untimely as to his first degree assault conviction.  Section 16-5-402(1), C.R.S. 2024, provides that postconviction challenges to non-class 1 felony convictions must be brought within three years of the conviction becoming final.  Manzanares did not file his motion until almost eight years after his convictions became final — nearly five years too late to challenge his class 3 felony assault conviction.  Accordingly, we address his claims only as to his first

6

degree murder conviction. *See People v. Stovall*, 2012 COA 7M,
¶ 37.

## B. Murder Conviction

¶ 13     Turning to Manzanares's challenge to his murder conviction,
we agree with the district court that Manzanares failed to prove his
two ineffective assistance claims. We discuss each claim in turn.

### 1. Choice of Defense

¶ 14     Heat of passion is a partial defense that mitigates second
degree murder from a class 2 felony to a class 3 felony.
§ 18-3-103(3), C.R.S. 2024. This mitigating circumstance occurs if
the act causing the death is "performed upon a sudden heat of
passion caused by a serious and highly provoking act of the
intended victim, affecting the defendant sufficiently to excite an
irresistible passion in a reasonable person." § 18-3-103(3)(b); *see
also* § 18-3-202(2)(a), C.R.S. 2024.

¶ 15     The district court found, with record support, that Emmons
reasonably chose a general denial/alternate suspect defense after
looking at all the evidence, including that (1) the prosecution had
no physical evidence pointing to Manzanares as the shooter; (2) the
only eyewitness, Bam, "had credibility issues"; and (3) the

7

prosecution could have used Manzanares's pre-arrest possession of heat of passion research to undermine that mitigator. The court further observed that to concede culpability for the shootings in pursuit of a heat of passion mitigator — exposing Manzanares to an aggregate sentence of twelve-and-a-half to forty years on both crimes — offered a negligible benefit and significant risk relative to the rejected plea offer of sixteen to forty-eight years. The court ultimately concluded that Emmons's strategic choice of defense did not amount to deficient representation. We agree.

¶ 16    The defendant's burden is particularly high when defense strategy is questioned. If there is a reasonable basis for defense counsel's strategic decision, "the decision enjoys a strong presumption of correctness." *Dunlap*, 173 P.3d at 1075. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*." *Strickland*, 466 U.S. at 690 (emphasis added).

¶ 17    For the reasons articulated by the district court, we conclude that there was a reasonable basis for Emmons's choice of defense. Moreover, we note that a heat of passion mitigator is inapplicable when, as could have been demonstrated in this case, a defendant

8

"intentionally put himself in the provoking situation." *See People v. Valdez*, 183 P.3d 720, 723 (Colo. App. 2008). Because Manzanares did not establish that Emmons's defense strategy fell outside the professionally competent range, we conclude that the district court properly denied this ineffective assistance claim.

### 2.	Plea Advice

¶ 18 The district court found, with record support, that (1) Emmons did not remember a twenty-year plea offer; (2) there was no physical evidence of such an offer; (3) the witnesses who testified that there had been a twenty-year offer were not credible; and, ultimately, (4) Manzanares had failed to demonstrate that a twenty-year plea offer ever existed. We defer to the district court's factual findings. *See Dunlap*, 173 P.3d at 1061-62; *Beauvais*, ¶ 22. Because Manzanares did not establish the existence of a twenty-year plea offer — a factual ground for his claim of deficient plea advice regarding such an offer — his ineffective plea advice claim cannot succeed. We conclude that the district court properly denied this claim.

### V.	Disposition

¶ 19 The order is affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.