JUSTICE MÁRQUEZ,
dissenting.
¶65 I respectfully dissent. Without question, trial courts have “a pivotal role in evaluating Batson claims.” Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). Because they work on the front lines of our legal system, trial judges “see and hear things that we on the appellate courts cannot see or hear,” including facial expressions, tone of voice, body language, and other behavior relevant to making credibility determinations. People v. Beauvais, 2014 COA 143, ¶¶ 46-47, — P.3d -(Bernard, J., concurring in part, specially concurring in part, and dissenting in part). For this reason, deference to a trial court is “especially appropriate where a trial judge has made a finding that an attorney credibly relied on [a juror’s] demeanor in exercising a [peremptory] strike.” Snyder, 552 U.S. at 479, 128 S.Ct. 1203.
¶66 But deference to a trial court’s actual findings regarding a prosecutor’s credibility or a potential juror’s demeanor is very different from the deference the majority now gives a trial court’s “ultimate Batson ruling.” Maj. op. ¶ 2. The majority purports to give *526 such deference only where “the record reflects that the trial court weighed all of the pertinent circumstances.” Id. Yet it simultaneously absolves trial courts of any obligation to make findings or otherwise lay an adequate record for appellate review. See id. at ¶¶ 32, 42. This tension in the majority’s approach renders appellate review a hollow exercise: How can a reviewing court meaningfully determine whether a trial court “weighed all of the pertinent circumstances” if the trial court need not make any findings at all? I fully respect the deference we must give to trial courts’ assessments of credibility and demeanor, but where the trial court makes no findings regarding any of several proffered reasons for exercising a peremptory strike, there is nothing on the record to which a reviewing court can properly defer. To reflexively uphold a trial court’s Batson ruling under such circumstances is not the kind of justifiable deference owed to a trial court’s assessment of credibility or demean- or—rather, it becomes an abdication of our responsibility as appellate courts. Today’s ruling, I fear, will only further erode Bat-son’s protections. See Michael J. Raphael & Edward J. Ungvarsky, Excuses, Excuses: Neutral Explanations under Batson v. Kentucky, 27 U. Mich. J.L. Reform 229, 267 (1993) (“We believe that our empirical analysis shows that the courts now lean far too heavily towards accepting prosecutors’ rationalizations for their peremptory challenges and demanding few limitations on prosecutors’ discretion to use strikes, notwithstanding Batson’s inference of discrimination.”); Jeffrey Beilin & Junichi P. Semitsu, Widening Batson’s Net to Ensnare more than the Unapologetically Bigoted or Painfully Unimaginative Attorney, 96 Cornell L. Rev. 1076, 1106 (2011) (“Batson, as currently applied, is unable to prevent the use of race in jury selection because its dictates are so easily avoided.”).
¶67 The majority’s approach also contravenes recent United States Supreme Court precedent. The trial court’s role in step three of the Batson analysis is to weigh the arguments of counsel and determine whether the strike proponent’s proffered explanation should be believed. A eonclusory ruling with no findings does not satisfy this obligation. The Supreme Court plainly required more in Snyder, 552 U.S. at 485-86, 128 S.Ct. 1203. It also required more in Foster v. Chatman, — U.S.-, 136 S.Ct. 1737, 1743, 195 L.Ed.2d 1 (2016). And this court should require more here, because the existing record simply does not support the trial court’s ruling.
¶68 Notably, the majority does not explain how this record establishes that the trial court in fact “weighed all of the pertinent circumstances.” The prosecutor’s consistent pattern of strikes in this case is troubling, particularly given that several of the reasons given for removing female jurors also applied to male jurors who were allowed to remain on the panel. Although the trial court could have simply credited one or more of the prosecutor’s explanations, it didn’t actually do that. To the contrary, the court expressed nothing but skepticism of those explanations. Beyond that, the court’s only comments focused on considerations that are irrelevant to a Batson analysis, namely, the likelihood of a mistrial if the court found a Batson violation (with accompanying speedy trial implications); the fact that the remaining jurors appeared to be impartial; and the fact that the prosecution fell short of removing all of the women on the panel. In short, nothing in the record before us reflects that the trial court actually weighed any of the pertinent circumstances. Accordingly, deference to the trial court’s ultimate Batson ruling is not warranted here. Rather, because the proper remedy for an inadequate Batson analysis is to remand to the trial court with directions to “make the required factual findings,” People v. Rodriguez, 2015 CO 55, ¶ 21, 351 P.3d 423, 431, I would remand this case for the trial court to do just that.
I. The United States Supreme Court’s Batson Jurisprudence
¶69 The Equal Protection Clause of the Fourteenth Amendment forbids an attorney from using a peremptory strike to remove a juror because of the juror’s, race. Batson v. Kentucky, 476 U.S. 79, 84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Equal protection also forbids striking a juror based on the juror’s gender. J.E.B. v. Alabama, 511 U.S. 127, 129, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). *527 Purposeful discrimination in jury selection harms both litigants and the individual jurors who are wrongfully excluded, and diminishes the public’s confidence in the fairness of judicial proceedings. Id. at 140, 114 S.Ct. 1419; Batson, 476 U.S. at 87, 106 S.Ct. 1712. For these reasons, “[t]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.” Foster, 136 S.Ct. at 1747 (quoting Snyder, 552 U.S. at 478, 128 S.Ct. 1203).
¶70 While the present case was pending before this court, the United States Supreme Court announced its decision in Foster v. Chatman, reversing the denial of a capital defendant’s Batson challenge after the prosecution used peremptory strikes to remove all of the black potential jurors from the panel. 136 S.Ct. at 1743, 1755. Foster reaffirms the essential role of appellate courts in preventing purposeful discrimination in jury selection in a line of cases including Snyder, 552 U.S. at 478, 128 S.Ct. 1203, Miller-El v. Dretke, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), and Batson, 476 U.S. at 96, 106 S.Ct. 1712, and confirms several of Batson’s central precepts relevant to the resolution of this case.
¶71 First, Foster confirms that both trial and appellate courts must consider “all of the circumstances” that inform whether a Batson violation has occurred. This requires a “sensitive inquiry into such circumstantial evidence as may be available.” Foster, 136 S.Ct. at 1748 (quoting Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).
¶72 In Foster, the Supreme Court had the benefit on habeas review of new information that the trial court did not have when it made its Batson ruling. After exhausting his direct appeal, Foster initiated state habeas corpus proceedings, during which he obtained the prosecution’s file for his ease. Id. at 1743—14. These documents included the jury venire list with the names of black prospective jurors highlighted in green and marked with the letter “B”; handwritten notes on black prospective jurors identifying them as “B#l,” “B#2,” and “B#3”; and a list, titled “definite NO’s [sic],” which included the names of all five qualified black prospective jurors. Id. at 1744.
¶73 Although this evidence was not before the trial court when it made its Batson ruling, the Court nevertheless reviewed these documents in considering the prosecution’s explanations to the trial court for exercising its peremptory challenges. Id. at 1748, 1749-50, 1753. The Court’s consideration of this new evidence confirms that reviewing courts must consider “all of the circumstantial evidence” when reviewing a Batson challenge. Id. at 1754.
¶74 Second, Foster reminds us that a reviewing court cannot credit an explanation for exercising a peremptory strike if that explanation is refuted by the record. For example, one prosecutor in Foster told the trial court that he struck a black juror because defense counsel did not question that juror about her opinions on the issues of insanity, alcohol, and the publicity surrounding the case—but trial transcripts showed that defense counsel asked the juror several questions about each of these topics. Id. at 1750. And although the prosecutor claimed that he struck another juror because defense counsel failed to ask him his thoughts about the age of the defendant, insanity, and pretrial publicity, the transcripts also refuted this assertion. Id. at 1754. Because the record directly contradicted these proffered explanations, the Supreme Court refused to credit them. Id. at 1750.
¶75 Third, Foster affirms that comparative juror analysis is a useful tool to uncover purposeful discrimination: “As we explained in Miller-El v. Dretke, ‘[i]f a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination.’” Id. at 1754 (alterations in original) (quoting 545 U.S. at 241, 125 S.Ct. 2317).
¶76 Notably, the majority holds today that a comparative juror analysis limits comparison to only the full combination of traits given as reasons for striking a juror. Maj. op, ¶ 57. In other words, the majority states, “if an attorney strikes a female potential juror because she is unemployed and lacks a col *528 lege degree, a male potential juror who is either unemployed or lacks a college degree would not be similarly situated and not suitable for comparison.” Id. But the Supreme Court’s recent Batson analysis in Foster plainly rejects this approach. There, the Court compared the prosecutoi*’s justifications for striking black potential jurors with characteristics of white jurors whom the State accepted and concluded that the State’s proffered explanations were pretextual. Foster, 136 S.Ct. at 1750-52. Notably, in so doing, the Court compared jurors on the basis of single traits, even though the prosecution offered multiple reasons for striking particular jurors.
¶77 For example, the prosecution articulated a “laundry list” of eleven reasons for striking thirty-four-year-old black potential juror Marilyn Garrett, including because she was divorced and too young. Id. at 1748, 1750. In conducting its comparative juror analysis, the Court never suggested that to be similarly situated and suitable for comparison, a white juror must share the same combination of traits as the black juror who was removed. To the contrary, the court compared several white jurors who shared only a single trait with Garrett. For instance, the Court observed that the prosecution declined to strike three out of four prospective white jurors who, like Garrett, were divorced. IA at 1750. It then separately observed that the prosecution declined to strike eight white prospective jurors under the age of thirty-six—including a twenty-one-year-old who served on the jury. Id. at 1750-51.
¶78 The Court’s comparative juror analysis for black potential juror Eddie Hood followed the same approach. The prosecution gave eight reasons for striking Hood, including because he had a son close in age to the defendant, and because his wife worked at a particular hospital that served people with mental illness. Id. at 1751, 1754. The Court Ad not suggest that to be comparable, a white juror must share all the traits the prosecution identified as reasons for striking Hood. To the contrary, it pointed out that the State accepted two white jurors who each had a son about the age of the defendant, incluAng one who admitted in voir dire that Foster’s youth probably would be a factor she woMd consider during sentencing. IA at 1752. Separately, it noted that the prosecution expressed no concerns about a white juror who had worked at the same hospital as Hood’s wife, and who Atimately served on the jury. Id. at 1754.
¶79 Reviewing this and other circumstantial evidence, the Court concluded that the prosecutors were motivated in substantial part by the race of the jurors when they struck Garrett and Hood from the panel, and therefore the prosecution’s strikes ran afoul of Batson. Id. By now requiring a comparable juror to share all the traits of a juror who was removed by a peremptory strike, the majority’s opinion will, as a practical matter, mean the end of meaningful comparative juror analysis. A party facing a Batson challenge need only be sure to recite two, or three (or eight, or eleven) reasons for striking a juror (like the prosecution in Foster Ad for jurors Hood and Garrett) to avoid comparisons that woMd expose those reasons as pretextual.
¶80 The majority’s rMing today also misreads the Supreme Court’s opimon in Snyder. In that case, the prosecutor offered two race-neutral reasons for striking black potential juror Jeffrey Brooks. Snyder, 552 U.S. at 478, 128 S.Ct. 1203. First, Brooks “looked very nervous” during voir dire. Id. Second, he expressed concern that he would have to miss his student-teaching classes. Id. With respect to the demeanor-based explanation, the Court noted that “deference is especially appropriate where a trial judge has made a finding that an attorney creAbly relied on demeanor in exercising a strike.” IA at 479, 128 S.Ct. 1203. Critically, however, the record in that case Ad not show that the trial judge “actually made a determination concerning Mr. Brooks’ demeanor.” Id. Instead, the court simply allowed the peremptory challenge “without explanation.” Id. Given the absence of any explanation from the trial court for its Batson ruling, the Court concluded, “we cannot presume that the trial judge creAted the prosecutor’s assertion that Mr. Brooks was nervous.” Id.
¶81 After refusing to creAt the prosecutor’s demeanor-based explanation, the Court *529 relied in part on comparative juror analysis to conclude that the prosecutor’s other proffered reason was pretextual. Id. at 483-85, 128 S.Ct. 1203. Because the prosecutor’s alternative explanation gave rise to an inference of discriminatory intent, and the record did not show that the prosecution would have challenged Brooks based on his nervousness alone, id. at 485, 128 S.Ct. 1203, the Court reversed and remanded, concluding that the trial court clearly erred in its Batson ruling. Id. at 474, 485-86,128 S.Ct. 1203.
¶82 Importantly, the Snyder Court refused to credit the prosecutor’s demeanor-based explanation for striking potential juror Brooks because of the “absence of anything in the record showing that the trial judge credited the claim that Mr. Brooks was nervous.” Id at 479, 485, 128 S.Ct. 1203. By contrast, the majority today holds that a trial court “need not make express findings” about the evidence bearing upon the plausibility of a proffered reason for striking a juror or “how [that evidence] contributes to the court’s ultimate ruling.” Maj. op. ¶ 32. I fail to understand how the majority’s approach squares with Snyder, at least where the prosecution offers a demeanor-based justification for striking a potential juror.
¶83 The majority’s reliance on Thaler v. Haynes, 559 U.S. 43, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010), is misplaced. Maj. op. ¶ 29. In that ease, two different judges presided during jury selection—one during voir dire, and another when peremptory challenges were exercised. Thaler, 559 U.S. at 44, 130 S.Ct. 1171. The Supreme Court rejected a blanket rule that a reviewing court must find clear error where the record shows the trial court was not able to verify the aspect of the prospective juror’s demeanor cited by the prosecution for its peremptory challenge. Id. at 46, 49, 130 S.Ct. 1171. The Court reiterated that where an explanation is based on a prospective juror’s demeanor, the judge should take into account, among other things, any observations the judge was able to make of the juror during voir dire—but that a demeanor-based explanation need not be rejected just because the judge did not observe or cannot recall the juror’s demeanor. Id. at 48,130 S.Ct. 1171. Rather, the judge can still accept the prosecutor’s explanation based on the judge’s assessment of the prosecutor’s credibility and demeanor. Id. at 49,130 S.Ct. 1171. But nothing in Thaler absolves trial courts of the obligation to make findings or otherwise lay an adequate record for appellate review, as the majority holds today.[11]
II. Application
¶84 In the majority’s view, the trial court’s Batson ruling was adequate in this case because the court concluded that Beauvais had not met her burden of proof. Maj. op. ¶¶ 12, 34. Under this circular logic, a trial court’s ruling rejecting a Batson claim is adequate because the trial court rejected the Batson claim. The majority’s approach absolves the trial court of its critical obligation to articulate which of several proffered justifications are credible. Moreover, it essentially insulates the trial court’s ruling from any meaningful appellate review.
¶85 Certainly if the prosecution offers only a single reason for striking a juror and the trial court concludes that the defendant has failed to meet his burden under the Batson framework, an appellate court may logically presume that the trial court implicitly credited the prosecution’s single proffered justification. E.g., People v. O’Shaughnessy, 275 P.3d 687, 692 (Colo. App. 2010) (“[T]he only reason the prosecutor gave for striking Prospective Juror T was based on her demeanor. Thus, there is no question that the trial court’s acceptance of the prosecutor’s explanation is entitled to deference on review.”). That is not the ease here, however, where the prosecution gave between three and five reasons for striking each of the female prospective jurors. On review, we cannot readily determine which, if any, of these justifications the trial court found credible.
¶86 The record before us instead strongly suggests that the prosecution purposefully *530 removed potential jurors from the venire because they were female.[12] The prosecution used five of its six peremptory strikes to remove women. It also chose to waive its final peremptory challenge; had the prosecution used its sixth strike, another female would have been empaneled on the jury. A “pattern” of strikes against a class of jurors gives rise to an inference of discrimination. Batson, 476 U.S. at 97, 106 S.Ct. 1712; accord Rodriguez, ¶ 1, 351 P.3d at 428.
¶87 Defense counsel also argued that the nature of the charges against Beauvais made the case particularly susceptible to gender stereotypes. The alleged victim was a married man with young children who communicated with Beauvais over the internet, telling her that he wanted to cheat on his wife. When he called off the affair, Beauvais was charged with stalking and harassing him and his wife. Given these facts, the prosecution could have believed that male jurors would be more sympathetic to the male victim, or that female jurors might hold the victim’s indiscretions against him, damaging the prosecution’s chances for a conviction. Cf. J.E.B., 511 U.S. at 140, 114 S.Ct. 1419 (“The potential for cynicism [toward the jury’s neutrality and its obligation to follow the law] is particularly acute in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity.”).
¶88 Other circumstantial evidence supports the conclusion that the peremptory strikes were based on gender. First, although it has been settled law for over twenty years, the prosecutor apparently did not realize that Batson extends to gender-based strikes. The prosecutor commented, “It has been a long time since I read that Batson case. I only heard it argued in terms of race neutral causes for peremptory challenges. So I’ve never heard it in terms of gender.” The prosecutor also appeared to mistakenly believe that defense counsel could not establish a prima facie Batson violation as long as some members of the targeted group remained on the panel. When the defense raised a Batson objection after the prosecution used three peremptory challenges in a row to remove female jurors, the prosecutor responded, “There is still six women [sic] on the panel so I don’t think it goes to the second prong of Batson where I have to single out a race neutral reason or gender neutral reason in this case.” But the fact that women remained on the panel is irrelevant to whether a Batson violation has occurred; where even one strike is motivated by discriminatory purpose, equal protection is violated. Foster, 136 S.Ct. at 1747; Snyder, 552 U.S. at 477-78, 128 S.Ct. 1203.
¶89 Additionally, at Batson’s third step, “implausible” and “fantastic” justifications should be discounted by the trial court as pretexts for purposeful discrimination. Foster, 136 S.Ct. at 1752-53; Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Here, some of the prosecutor’s proffered gender-neutral reasons for striking the women, while reasonable on their face, crumble under closer scrutiny. See Foster, 136 S.Ct. at 1749 (“On their face, [the prosecutor’s] justifications for the strike seem reasonable enough. Our independent examination of the record, however, reveals that much of the reasoning provided by [the prosecutor] has no grounding in fact.”).
¶90 For example, the prosecution told the court that it struck female potential juror K.G. because she appeared young, had no kids, and because she had relationships “with a large amount of law enforcement officers.” In response to the last of these proffered justifications, defense counsel observed that as a matter of common sense, “the People *531 rarely if ever challenge a juror because of their extensive connections to law enforcement.” And the record shows the prosecution lodged no objections to two male empaneled jurors who likewise had ties to law enforcement.
¶91 Another noteworthy example in this case is female potential juror S.B. The prosecutor told the court that he struck S.B. for three reasons: (1) she “looked disinterested during the questioning. ... She never raised her hand for any issue. Never nodded when another juror spoke and oftentimes was looking away from me during my questioning looking at her watch”; (2) she appeared to be young; and (3) she had no children. Beginning, as the Supreme Court did in Snyder, with the demeanor-based reason for the strike, I observe that nothing in the record shows that the trial court ever credited the prosecution’s assertion that S.B. demonstrated a lack of interest in the proceedings. See 552 U.S. at 479, 128 S.Ct. 1203. Where a neutral justification for a peremptory strike involves a juror’s demeanor, “the trial court’s firsthand observations [are] of even greater importance.” Id. at 477, 128 S.Ct. 1203. Because the trial court simply denied defense counsel’s Batson challenge without findings and without explanation, “we cannot presume that the trial judge credited the prosecutor’s assertion” that S.B. was disinterested in the proceedings. Id at 479,128 S.Ct. 1203.
¶92 Moreover, the prosecutor’s two objectively verifiable reasons for striking both K.G. and S.B.—that they were young and had no children—appear pretextual. See Foster, 136 S.Ct. at 1754 (“If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination.” (alteration in original) (quoting Dretke, 545 U.S. at 241, 125 S.Ct. 2317)). Defense counsel pointed out that the People accepted three male jurors who also appeared young. And six male potential jurors represented that they were childless, yet they served on the jury.
¶93 It is also significant that the prosecution asked no questions at all of two of the female potential jurors removed from the panel. “The State’s failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.” Dretke, 545 U.S. at 246, 125 S.Ct. 2317 (quoting Ex parte Travis, 776 So.2d 874, 881 (Ala. 2000)).
¶94 All of this evidence—the pattern of strikes against five women, the prosecutor’s ignorance of the law, the implausible proffered neutral justifications, and the prosecution’s failure to question two of the jurors it struck—strongly suggests that the prosecution acted intentionally to remove the jurors because of their gender.
¶95 Despite the abundant circumstantial evidence of the prosecutor’s intent to remove women from the panel, the trial court held that defense counsel had not established purposeful discrimination. In my view, the trial court’s Batson analysis ultimately fell short because the court appeared to misapprehend the purpose of the Batson challenge; was preoccupied with irrelevant concerns; and failed to make any findings crediting the prosecution’s proffered justifications. In fact, the findings that the court did make actually support Beauvais’ contention that the strikes were motivated by gender.
¶96 First, the trial court appeared to mistakenly believe that the prosecution could not violate Batson unless it removed all of the females from the jury. The court appeared to reason that the prosecution’s inability to remove all of the women from the jury reduced the likelihood of a Batson violation:
So at a minimum we are having a third to a quarter of the jurors be women. I think an effort to try to remove all women from the jury when it is clear that cannot be done reduces the likelihood that the challenges were for gender-based reasons. It doesn’t eliminate it. It certainly keeps a jury at a minimal percentage in that regard arguably.
(Emphasis added.) To prove a Batson violation, however, a challenger need not establish that a party removed all members of a targeted group. The Constitution forbids striking even a single juror because of gender or *532 race. Foster, 136 S.Ct. at 1747; Snyder, 552 U.S. at 477-78, 128 S.Ct. 1203; accord Valdez v. People, 966 P.2d 587, 590 (Colo. 1998).
¶97 Next, after listening to the arguments of counsel, the trial court expressed concern about the speedy trial implications of sustaining the Batson objection:
First and foremost, as a practical matter if I were to grant the challenge the result would be that we would dismiss this panel and likely reset a new trial date within speedy trial and begin again with a new panel. And I know that is something Ms. Beauvais is opposed to as a practical matter, nevertheless, she has a right to a fair jury trial.
To the extent that the trial court was concerned with the speedy trial implications of a Batson violation, such a concern is simply not relevant to whether any peremptory strike was impermissibly motivated by race or gender.
¶98 The trial court then turned to the merits of the parties’ positions. Remarkably, the only comment that the trial court made with respect to the prosecution’s explanations was to acknowledge their weakness, observing that “on the one hand I think the basis and reasons for the [prosecution’s peremptory] challenges are not strong,” and noting it had “concerns given the nature and the outcome and the circumstances.” The court never turned to the “other hand.” Instead, it observed, “I think we have a number of jurors who all likely could probably be unbiased and fair and impartial.” However, whether the jurors who have been seated are fair and impartial is irrelevant to the Batson analysis.
¶99 The trial court did not discuss any of the several reasons proffered for striking the individual women. Instead, it simply concluded, “I’m going to find at this point we have not established there was purposeful discrimination.”
¶100 At Batson’s third step, the court must evaluate the prosecutor’s credibility and decide whether a strike demonstrated purposeful discrimination; this decision “turns on factual determinations.” Foster, 136 S.Ct. at 1747 (citing Snyder, 552 U.S. at 477, 128 S.Ct. 1203). But crucially, the trial court made no factual determinations here. Besides the skepticism that the trial court expressed as to the prosecution’s proffered justifications, the court did not make a single finding relevant to the critical step three of the Batson determination. To the contrary, the record instead reflects the trial court’s concerns about the weakness of the prosecution’s case, the pattern of strikes, and the prosecutor’s and the trial court’s apparent misunderstanding of what Batson requires.
¶1011 simply cannot agree that the record in this case shows that the trial court “weighed all of the pertinent circumstances.” Under these circumstances, I see no basis to defer to the trial court’s ultimate Batson ruling.
III. Conclusion
¶102 Judges and academics have criticized the Batson framework as inadequate for the task, and it is not difficult to see why. See Beilin & Semitsu, supra, at 1114 n.212 (collecting articles). To sustain a Batson objection places a trial court judge in the unenviable position of finding that an attorney standing before the court both intentionally excluded someone from the jury based on race or gender, and offered the court a pre-textual reason for doing so. Id. at 1113-15. Justice Thurgood Marshall described Bat-son’s greatest flaw as its implicit assumption that courts are capable of recognizing when a strike is exercised based on race, because, even assuming good faith on the part of all involved, Batson requires courts “to confront and overcome their own racism on all levels—a most difficult challenge to meet.” Wilkerson v. Texas, 493 U.S. 924, 928, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (Marshall, J., dissenting from denial of certiorari); see also Batson, 476 U.S. at 106, 106 S.Ct. 1712 (Marshall, J., dissenting) (noting that “[a] prosecutor’s own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is ‘sullen,’ or ‘distant,’ a characterization that would not have come to his mind if a white juror had acted identically,” and that “[a] judge’s own conscious or unconscious racism can lead him to accept such an explanation as well supported.”). “This flaw has rendered Batson ineffective against all but the most obvious *533 examples of racial prejudice—the cases in which a proffered ‘neutral explanation’ plainly betrays an underlying impermissible purpose.” Wilkerson, 493 U.S. at 928, 110 S.Ct. 292 (Marshall, J., dissenting from denial of certiorari). Certainly, prosecutors’ peremptory strikes can be based on nothing more than instincts about how a juror may view a case. But as Justice Marshall reminds us, “‘seat-of-the-pants instincts’ may often be just another term for racial prejudice.” Batson, 476 U.S. at 106, 106 S.Ct. 1712 (Marshall, J., dissenting).
¶103 Given that trial courts are faced with a difficult task when evaluating a Batson challenge, the role of the appellate court in protecting the constitutional rights at stake becomes all the more critical. Appellate courts are uniquely positioned to counteract the implicit bias and unconscious discrimination that can operate to exclude minority members from meaningful participation in the justice system. See Judge Mark W. Bennett, Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions, 4 Harv. L. & Pol’y Rev. 149, 158 (2010). Reviewing courts must be willing to examine the record with a skeptical eye and reverse when necessary, so that members of the public are not excluded from jury service in violation of the Constitution.
¶104 Jury selection procedures that permit purposeful discrimination undermine public confidence in the fairness of the verdict. Georgia v. McCollum, 505 U.S. 42, 49, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). “The need for public confidence in our judicial process and the integrity of the criminal justice system is essential for preserving community peace.” People v. Cerrone, 854 P.2d 178, 196 (Colo. 1993) (Scott, J., dissenting). It is therefore “of paramount importance that the community believes we guarantee even-handed entry into our criminal justice system by way of the jury panel.” Id.
¶105 The result of today’s decision, I fear, is that peremptory challenges will become “largely immune from constitutional scrutiny.” Batson, 476 U.S. at 92-93, 106 S.Ct. 1712. I respectfully dissent.

. The majority’s citation to People v. Wilson, 2015 CO 54M, 351 P.3d 1126, fares no better as support for today’s holding. Maj. op. ¶ 32. In that case, the trial court did make observations about the juror who was removed, noting that the juror "waffled back and forth” and "hesitated for an extended period” in voir dire. Wilson, ¶ 19, 351 P.3d at 1133.

. Purposeful discrimination in this context does not require that the prosecution harbor animus, i.e., ill will or animosity, toward women. See Purposeful, Black's Law Dictionary (10th ed. 2014). Rather, a strike demonstrates purposeful discrimination where it is based on the juror's gender or race as a proxy for the juror’s assumed bias—for example, striking males in a paternity action on the assumption that men might be more sympathetic to the alleged father of an out-of-wedlock child, while women might be more sympathetic to the mother. See J.E.B., 511 U.S. at 137-38, 142, 143, 114 S.Ct. 1419; Batson, 476 U.S. at 89, 106 S.Ct, 1712 ("Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all ... the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.”).