2015 CO 55

**The PEOPLE of the State of Colorado, Petitioner**

**v.**

**Romielo RODRIGUEZ, Respondent**

**Supreme Court Case No. 13SC115**

Supreme Court of Colorado.

June 29, 2015

Attorneys for Petitioner: Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado.

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Dayna Vise, Deputy Public Defender, Denver, Colorado.

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this appeal, we consider how both trial and appellate courts should determine whether a party has used a peremptory challenge to purposefully discriminate against a prospective juror on account of her race, in

violation of the U.S. Supreme Court's rule in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court in this case denied two *Batson* challenges raised by the petitioner, Romielo Rodriguez, for lack of a pattern of strikes against members of a cognizable racial group. The court of appeals reversed Rodriguez's convictions and ordered a new trial because it held that the trial court clearly erred by denying Rodriguez's *Batson* challenges for failure to show a pattern of discrimination. *People v. Rodriguez*, No. 09CA2404, slip op. at 16, 18, 2012 WL 6051960 (Colo.App. Dec. 6, 2012). Although a pattern of strikes "might give rise to an inference of discrimination," *Batson*, 476 U.S. at 97, 106 S.Ct. 1712, it is not a prerequisite to a successful *Batson* challenge, *United States v. Vasquez–Lopez*, 22 F.3d 900, 902 (9th Cir.1994).

▆▆▆ ¶ 2 We granted the People's petition for certiorari to review the court of appeals' decision to reverse Rodriguez's convictions and order a new trial. We now reverse the court of appeals' judgment. We hold that the proper remedy for an inadequate inquiry into a *Batson* challenge at the time of jury selection is to remand the case to the trial court with directions to conduct the three-part *Batson* analysis and make the required factual findings. An inadequate *Batson* inquiry occurs when the trial court's findings are insufficient to determine whether the opponent of the peremptory strike has proved that the proponent used the strike to purposefully discriminate against prospective jurors on account of their race.[1] In this case, the trial court mistakenly believed that a successful *Batson* claim requires a pattern of racially motivated strikes; consequently, it did not complete an adequate *Batson* analysis with respect to either of the prospective jurors at issue. We therefore reverse the court of appeals and remand the case to that court with instructions to return it to the trial court with directions to conduct the three-part *Batson* analysis described in this opinion.

## I. Facts and Proceedings Below

¶ 3 The People charged Rodriguez with three counts of felony menacing after his neighbors alleged that he and a co-defendant pointed guns at them during a dispute. Rodriguez pled not guilty, and his trial began in August 2009. During jury selection, the prosecutor used his first peremptory strike to excuse Ms. D., a black woman. Rodriguez raised a *Batson* objection, and the following conversation occurred at the bench:

> Defense counsel: Judge, it's obvious she's a woman of color. I don't know what responses she gave that this prosecutor had concern with.
>
> The court: Mr. [prosecutor].
>
> The prosecutor: Well, Judge, A, I would like to have counsel to demonstrate a pattern that's necessary under *Batson*. B—
>
> The court: That's the issue. These are peremptories, not challenges for cause. Your motion is denied. Let's proceed.
>
> The prosecutor: And Judge, just for the record, I'll let the record show as well, for the appellate record, if there is one, that defense counsel went in depth on identification issues and Ms. [D.] indicated that she feels there is mistaken identity all the time.
>
> The court: I hear. That pattern was the issue.

The court then concluded the bench conference and directed Ms. D. to check out with the jury commissioner.

¶ 4 Rodriguez raised another *Batson* objection when the prosecutor used his second peremptory strike to excuse Ms. A., who has

---

1. Although this case involves alleged racial discrimination by the prosecution in a criminal case, *Batson*'s equal protection analysis reaches more broadly. The Equal Protection Clause of the Fourteenth Amendment prohibits gender discrimination, as well as racial discrimination, in the selection of the petit jury. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *accord Craig v. Carlson*, 161 P.3d 648, 653 (Colo.2007). Its prohibition applies not only to prosecutors but also to civil litigants, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), and criminal defendants, *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Further, it does not require racial identity between the defendant and the subject of the peremptory strike. *Powers v. Ohio*, 499 U.S. 400, 406, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

a Hispanic surname. On her juror questionnaire, Ms. A. had stated that she was affiliated with a church. The questionnaire also asked, "Is there any reason you believe you could not be a fair juror in a criminal case? If so, what?" Ms. A. did not answer the first part of the question but wrote, in the blank at the end of the question, "Because of my religious beliefs." Neither the prosecutor nor the defense asked Ms. A. about this comment, and neither challenged her for cause.[2] In response to Rodriguez's *Batson* objection, the trial court held the following bench conference:

> Defense counsel: Judge, the problem here is that the prosecution has clearly tried to exercise a challenge on a woman who is of Hispanic minority. "[A]" is her last name. The issue in this case, Judge, is that the alleged victims used the word "beaner" in this case. I think that [the prosecutor is] trying to eliminate any people of color on this panel.
>
> The court: Mr. [prosecutor].
>
> The prosecutor: Judge, I would like to ask the Court to take note of Ms. [A.]'s juror questionnaire under Question 20. She indicates the reason she cannot be fair is because of her religious beliefs. There is a reason.
>
> Based on the fact she has these religious beliefs and she can't be fair, I don't think they can judge a person sitting in this situation. Therefore, that's the People's nonbiased reason for getting rid of Ms. [A.], not to mention the fact they have other Hispanic women on the panel.
>
> Defense counsel: There was no inquiry into that.
>
> The court: I didn't hear any questioning into that area.

> The prosecutor: Judge, I take notice of the juror's questionnaire. We have that on the questionnaire. It says specifically she cannot be fair because of her religious views.
>
> The court: I understand. That will probably sustain on appeal. If it doesn't, well, then it's probably my fault. But we're developing a pattern that I'm starting to see. So I don't expect to have a Hispanic name on the next one.

After the trial court dismissed Ms. A., the prosecutor exercised three more peremptory challenges, leaving one unused. Rodriguez used all six peremptory challenges available to him.[3] This process left a panel of twelve jurors and one alternate. The record does not reveal the racial composition of the jury or the race of the other peremptorily struck veniremembers.

¶5 At the end of trial, the jury found Rodriguez guilty as charged. The court sentenced him to thirty-six months' probation. Rodriguez appealed his convictions and claimed that the prosecutor peremptorily struck Ms. D and Ms. A. on account of race, in contravention of the Equal Protection Clause of the Fourteenth Amendment as interpreted in *Batson*. The court of appeals agreed that both strikes violated *Batson* and concluded that *People v. Wilson*, 2012 COA 163M, —— P.3d ——, *as modified on denial of reh'g* (Nov. 29, 2012), which held that *Batson* violations constitute structural errors, compelled reversal of Rodriguez's convictions. *Rodriguez*, slip op. at 12, 18. Accordingly, the court of appeals remanded Rodriguez's case for a new trial. *Id.* at 18.

¶6 We granted the People's petition for certiorari to consider whether the court of appeals chose the proper remedy.[4]

---

2. According to section 16–10–103(1)(j), C.R.S. (2014), the court must sustain a challenge for cause against a juror whose state of mind "evince[s] enmity or bias toward the defendant or the state," unless "the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial."

3. Rodriguez faced felony charges, and the court sat one alternate juror; therefore each side could peremptorily strike up to six prospective jurors. *See* §§ 16–10–104, –105, C.R.S. (2014).

4. Specifically, we granted certiorari to consider "[w]hether the court of appeals erred by automatically reversing rather than remanding the case for further findings after it concluded that the trial court had conducted an inadequate analysis under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)."

## II. Analysis

¶ 7 The proper remedy in this case depends upon whether the trial court completed the *Batson* analysis but made a clearly erroneous ruling as to the existence of racial discrimination, or whether the court conducted an inadequate *Batson* analysis. Rodriguez asserts that the record of voir dire compels the conclusion that the prosecutor's strikes were racially motivated—in other words, that the prosecutor violated *Batson* — and that the court of appeals was therefore correct to reverse Rodriguez's convictions and order a new trial. The People concede that the trial court erred but argue that no *Batson* violation occurred; rather, the trial court merely conducted a deficient *Batson* analysis. According to the People, the proper remedy under these circumstances is to remand the case to the trial court for a new *Batson* analysis. Hence, the issue before us is whether the trial court applied the correct legal standard and made sufficient findings to allow a reviewing court to determine whether Rodriguez established that the prosecutor struck either prospective juror because of her race.

¶ 8 To answer this question, we start with an outline of the *Batson* analysis, which requires the trial court to determine whether the challenger of a peremptory strike has proved purposeful discrimination, and the standard of review applicable to the trial court's findings. Next we look at how the trial court in the instant case dealt with Rodriguez's *Batson* objections. We determine that the trial court applied an incorrect legal standard and never decided whether Rodriguez established purposeful discrimination. Finally, we conclude that the proper remedy under these circumstances is a remand for the trial court to conduct a new *Batson* analysis.

### A. The *Batson* Analysis

¶ 9 For over a century, the U.S. Supreme Court has recognized that the "[e]xclusion of ... citizens from service as jurors [on account of their race] constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Batson*, 476 U.S. at 85, 106 S.Ct. 1712 (describing its holding in *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879)). But before *Batson*, a defendant could establish an equal protection violation only by showing a pattern of racially motivated strikes "over a number of cases." *Id.* at 92, 106 S.Ct. 1712 (describing lower courts' interpretation of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). That standard "placed on defendants a crippling burden of proof" and rendered peremptory challenges "largely immune from constitutional scrutiny." *Id.* at 92–93, 106 S.Ct. 1712. Reasoning that " 'a consistent pattern of official racial discrimination' is not 'a necessary predicate to a violation of the Equal Protection Clause,' " the *Batson* Court jettisoned the *Swain* standard. *Id.* at 95, 106 S.Ct. 1712 (quoting *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 n.14, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). In its place, the Court articulated a three-part test whereby a defendant may prove purposeful discrimination "by relying solely on the facts concerning [jury] selection *in his case.*" *Id.*

¶ 10 At the first step, the defendant must make a prima facie showing that the peremptory strike was based on the prospective juror's race. *Miller–El v. Cockrell (Miller–El I)*, 537 U.S. 322, 328, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). To raise the necessary inference of purposeful discrimination, the defendant may rely on all relevant circumstances. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712. One example of a relevant circumstance, the *Batson* Court suggested, is "a 'pattern' of strikes" against members of a cognizable racial group. *Id.* at 97, 106 S.Ct. 1712. But a pattern is not essential to a prima facie showing. "For evidentiary requirements to dictate that several must suffer discrimination before one could object would be inconsistent with the promise of equal protection to all." *Id.* at 95–96, 106 S.Ct. 1712 (internal quotation marks and citation omitted); *see also Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (" '[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.' ") (quoting *Vasquez–Lopez*, 22 F.3d at 902). As long as

the totality of the circumstances raises an inference of racial motivation, the defendant has satisfied his step-one burden. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712; *accord Valdez v. People,* 966 P.2d 587, 589 (Colo.1998).

■ ¶ 11 The burden of production then shifts to the proponent of the strike. *Batson,* 476 U.S. at 97, 106 S.Ct. 1712. At step two, the prosecutor must come forward with a race-neutral explanation "related to the particular case to be tried." *Id.* at 98, 106 S.Ct. 1712. Examples include a prospective juror's out-of-court obligations, *Snyder,* 552 U.S. at 478, 128 S.Ct. 1203, family members' prior convictions, *see Miller–El v. Dretke (Miller–El II),* 545 U.S. 231, 246, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), and lack of ties to the community, *see Rice v. Collins,* 546 U.S. 333, 341, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006). Although the prosecutor must do more than deny a discriminatory motive or affirm his good faith, *Batson,* 476 U.S. at 98, 106 S.Ct. 1712, the bar at step two is not high, *Valdez,* 966 P.2d at 590. To pass muster, the explanation need not be "persuasive, or even plausible," as long as it does not deny equal protection. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Hence, the U.S. Supreme Court has even accepted a prospective juror's "long, curly hair" as a satisfactory step-two explanation because it was not inherently discriminatory. *Id.* at 766, 768, 115 S.Ct. 1769. Nothing more is required for the inquiry to proceed to step three. *See id.* at 768, 115 S.Ct. 1769.

■ ¶ 12 At step three, after the defendant has a chance to rebut the prosecutor's race-neutral explanation, the trial court must decide the ultimate question: whether the defendant has established purposeful discrimination. *Batson,* 476 U.S. at 98, 106 S.Ct. 1712. It is at this stage that "implausible or fantastic [step-two] justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769. As we discussed in *People v. Wilson,* 2015 CO 54, ¶ 13, 351 P.3d 1126, the trial court's step-three ruling should be based on its evaluation of the prosecutor's credibility and the plausibility of his explanation. If the trial court is con-

vinced, in light of all the evidence, that the proffered reason was pretextual and that the prosecutor actually based his peremptory strike on the prospective juror's race, then it must uphold the *Batson* challenge. *Miller–El II,* 545 U.S. at 252, 125 S.Ct. 2317; *Wilson,* ¶ 13.

**B. Standard of Review**

■ ¶ 13 On appeal, each step of the trial court's *Batson* analysis is subject to a separate standard of review. *Valdez,* 966 P.2d at 590. First, the reviewing court considers de novo whether the defendant established a legally sufficient prima facie case—though it should defer to the trial court's underlying factual findings. *Id.* at 591. Similarly, at step two, the facial validity of the prosecutor's justification "is a question of law warranting de novo review." *Id.* (citing *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769). By contrast, the trial court's step-three determination as to the existence of racial discrimination is an issue of fact to which an appellate court should defer, reviewing only for clear error. *Snyder,* 552 U.S. at 477, 128 S.Ct. 1203; *Batson,* 476 U.S. at 98 n.21, 106 S.Ct. 1712 ("Since the trial judge's findings in the context under consideration [at step three] largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."); *see also Wilson,* ¶ 17.

**C. The Trial Court's Findings**

¶ 14 In the instant case, the trial court held two bench conferences in response to Rodriguez's two *Batson* challenges. After concluding each conference, the court denied the challenge and excused the prospective juror. To determine whether we can conclude that either strike violated *Batson,* we evaluate the adequacy of the trial court's findings with respect to Ms. D. and Ms. A. separately.

**1. The Dismissal of Ms. D.**

■ ¶ 15 Without asking the prosecutor to explain striking Ms. D., the trial court dismissed her because Rodriguez did not demonstrate a pattern of racially motivated strikes. The trial court was correct that a

pattern of strikes is relevant to the existence of a prima facie case, but it erred by finding the absence of a pattern dispositive at step one.[5] *See Snyder*, 552 U.S. at 478, 128 S.Ct. 1203; *Vasquez–Lopez*, 22 F.3d at 902. Any evidence that supports an inference of discrimination can form the basis for a prima facie case under *Batson*, and the court should consider all relevant circumstances. *Valdez*, 966 P.2d at 589–90. In this case, the prosecutor used his first peremptory challenge to excuse Ms. D., so there was no way Rodriguez could use a pattern of racially motivated strikes to raise an inference of discrimination.

¶ 16 Nevertheless, "just as 'one' is not a magic number which establishes the absence of discrimination," the fact that the prosecutor struck a minority veniremember "does not, in itself, raise an inference of discrimination." *Vasquez–Lopez*, 22 F.3d at 902. Here, Rodriguez argued only that the prosecutor struck a member of a cognizable racial group who, he contended, was a suitable juror. Then, instead of offering a race-neutral explanation for excusing her, the prosecutor argued that a successful *Batson* objection requires a pattern. The court agreed and ended its inquiry. From this record, it is impossible to conclude whether Rodriguez satisfied his burden at step one. Further factual findings are necessary to decide whether Rodriguez presented enough evidence to raise an inference that the prosecutor struck Ms. D. because of her race and require the trial court to proceed to step two of the *Batson* analysis.[6]

### 2. The Dismissal of Ms. A.

¶ 17 The trial court also denied Rodriguez's *Batson* challenge to the dismissal of Ms. A., although the grounds for its decision are unclear. At step one, Rodriguez pointed out that Ms. A. is Hispanic and that some testimony might be racially divisive because one victim used a racial slur. *Cf. Valdez*, 966 P.2d at 596 (holding that a prosecutor's references to the O.J. Simpson trial, "combined with his pattern of peremptory strikes, establish[ed] a prima facie case"). At step two, the prosecutor explained that her juror questionnaire suggested an inability to be fair. However, the trial court did not make any findings as to either the legal sufficiency of Rodriguez's prima facie case at step one or the facial validity of the prosecutor's race-neutral reason at step two. Nor did the trial court determine, at step three, whether the prosecutor's explanation was believable or pretextual. *See, e.g., Snyder*, 552 U.S. at 484–85, 128 S.Ct. 1203.

¶ 18 Instead, the trial court concluded the bench conference by stating, "That will probably sustain on appeal. If it doesn't, then it's probably my fault. But we're developing a pattern that I'm starting to see. So I don't expect to have a Hispanic name on the next one." This statement shows that the court remained preoccupied with the search for a pattern of discrimination; though, as discussed above, a pattern is neither the starting point nor the ending point for a finding of purposeful discrimination under *Batson*. Rather, the goal is to discern the prosecutor's intent, as evidenced by his demeanor. *See id.* at 477, 128 S.Ct. 1203. Especially at step three, the trial court's firsthand observations are crucial: it "must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the [prospective] juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the [prospective] juror by the prosecutor." *Id.* In this case, the trial court was also best situated to ascertain why the prosecutor never asked Ms. A. about the questionnaire response that he used to justify striking her

---

5. Although the prosecutor offered a race-neutral explanation—that Ms. D. "feels there is mistaken identity all the time"—the trial court based its ruling on the lack of a pattern. Hence, the trial court never ruled on the validity of the prosecutor's justification at step two.

6. If the sufficiency of Rodriguez's prima facie case remains unclear, then the "better policy" is for the trial court to move forward with the *Batson* inquiry and ask the prosecutor to justify the strike. *Valdez*, 966 P.2d at 594 n.15; *Johnson v. California*, 545 U.S. 162, 172–73, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) ("The *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process.").

from the jury panel.[7] Absent the resolution of these factual issues, it is impossible for a reviewing court to tell whether the prosecutor struck Ms. A. because of her race.

### D. Remedy

¶ 19 We cannot conclude, based on this record, whether the prosecutor struck either Ms. D. or Ms. A. because of her race, in contravention of the Equal Protection Clause as interpreted in *Batson*. "Ordinarily, when a trial court has not adequately conducted the *Batson* analysis, the appropriate procedure is to remand the case for more detailed findings by the trial court." *Craig v. Carlson*, 161 P.3d 648, 654 (Colo. 2007); *cf. Batson*, 476 U.S. at 100, 106 S.Ct. 1712 (remanding the case to the trial court for further proceedings "[b]ecause [it] flatly rejected the objection without requiring the prosecutor to give an explanation for his action"). Rodriguez argues that a remand would be inappropriate in this case, however, because the passage of time prevents a meaningful inquiry into the prosecutor's motives at the time of trial. Rodriguez was convicted almost six years ago, and all that is left of his trial are transcripts, verdict forms, and juror questionnaires.

¶ 20 However, the purpose of the *Batson* analysis is "to ferret out the unconstitutional use of race in jury selection." *Miller–El II*, 545 U.S. at 266, 125 S.Ct. 2317 (Breyer, J., concurring). An inadequate analysis by the trial court does not equate to a constitutional violation by the prosecutor, and it should not call for the same remedy. The passage of time may create challenges for the trial court on remand, but those challenges do not alter the structure of the *Batson* analysis or relieve Rodriguez of his burden. *See People v. Johnson*, 38 Cal.4th 1096, 45 Cal.Rptr.3d 1, 136 P.3d 804, 807 (2006) (remanding for a new *Batson* hearing seven-and-a-half years after jury selection and collecting cases posing similar temporal difficulties). The only way to determine whether racial discrimination tainted the prosecutor's use of peremptory challenges is for the trial court to conduct further proceedings as it deems necessary on remand and complete the *Batson* analysis. *Cf. Batson*, 476 U.S. at 100, 106 S.Ct. 1712; *Johnson*, 545 U.S. at 173, 125 S.Ct. 2410. If the trial court determines that the prosecutor struck both Ms. D. and Ms. A. for race-neutral reasons, then Rodriguez's convictions should stand.[8]

### III. Conclusion

¶ 21 We hold that the proper remedy for an inadequate inquiry into a *Batson* challenge at the time of jury selection is to remand the case to the trial court with directions to conduct the three-part *Batson* analysis and make the required factual findings. An inadequate *Batson* inquiry occurs when the trial court's findings are insufficient to determine whether the opponent of the peremptory strike has proved that the proponent used the strike to purposefully discriminate against prospective jurors on account of their race. Accordingly, we reverse the judgment of the court of appeals reversing Rodriguez's convictions and ordering a new trial. We remand the case to the court of appeals with instructions to return it to the trial court with directions to conduct the three-part *Batson* analysis described in this opinion.

---

7. The prosecutor's failure to question the prospective juror about her questionnaire does not give rise to a presumption of pretext. At step three, the trial court should consider all relevant circumstances to determine whether an attorney's asserted justification is plausible.

8. Because we cannot conclude whether a *Batson* error occurred, we do not reach the appropriate remedy for such an error.